UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Anthony GARCIA,
Defendant–Appellant.

No. 89–50589.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1990.

Decided July 25, 1990.

C. Anthony Valladolid, San Diego, Cal., for defendant-appellant.

Peter C. Lewis, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before HUG, BEEZER and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

Robert Anthony Garcia entered a conditional plea of guilty to a charge of possession of counterfeit federal reserve notes, reserving his right to appeal the district court's denial of his pretrial motion to suppress evidence. He also appeals his sentence. We affirm his conviction and reverse and remand for resentencing.

## FACTS

On April 28, 1989 a little after 9:00 p.m., two California Highway Patrol Officers observed Garcia riding a motorcycle at a speed of between 80 and 90 miles per hour and weaving in and out of traffic on Interstate Highway 805 in the Chula Vista area. Garcia left the freeway on an exit which narrowed to one lane. The officers pursued, flashing their lights and sounding their siren. Garcia failed to stop and appeared to try, unsuccessfully, to pass the car that was directly in front of him. The officers used their public address system to tell him to stop. He complied. The officers ordered Garcia off his motorcycle and advised him of the reason for the stop. He dismounted and, taking a "fanny pack" from around his waist, he set it on the gas tank of his motorcycle in order to retrieve his license and registration as required by the officers. He left the fanny pack open.

The area of the stop was very dark. Garcia is six feet one inch tall and weighs 200 pounds. He was wearing a heavy jacket capable of hiding a weapon. Officer Hector Paredes patted him down for weapons. No weapons were found, but the officer saw that he wore a telephone pager or beeper at his waist. Despite the coolness of the evening he appeared nervous and was sweating.

Two and a half to three feet from Garcia the fanny pack lay open on the motorcycle. Officer Clark noted inside it a white colored bag with the letters "B of A" written on it. He checked the fanny pack for possible weapons by putting his hand on the part of the pack containing the bag and feeling it. It felt like it contained money.

Officer Clark asked Garcia what was in the bag. Garcia replied, "Nothing." Clark reached over and squeezed the bundle and stated, "It feels like a lot of money." Garcia stated loudly, "Get your hands off there."

Officer Clark attempted to get Garcia to sit down and put his hand on Garcia's shoulder to achieve this end. When Clark removed his hand, Garcia bolted into the nearby field. The officers gave pursuit.

In the middle of the field Garcia surrendered.

Garcia was then handcuffed and returned to the patrol car. Clark searched the fanny pack and discovered within the white bag a bundle of counterfeit $50 bills. A small bundle of methamphetamine was found inside Garcia's jacket.

## PROCEEDINGS

Garcia was prosecuted for possession of the methamphetamine and convicted in a state court; sentence was imposed on August 18, 1989. Federally, he was charged with possession of the counterfeit bills in violation of 18 U.S.C. § 472. Garcia moved to suppress the $50 bills on the ground that the search had been conducted in violation of the Fourth Amendment. The district court found the facts above recited, in the process of so finding holding that Officer Clark was a credible witness and to the extent that Garcia contradicted him Garcia was not a credible witness. Refusing to suppress the evidence, the district court held that the search was justified on two independent grounds—Garcia's abandonment of the pack by flight; and the flight and other attendant circumstances giving probable cause to search the pack. Garcia entered a conditional plea of guilty.

In calculating his criminal history Garcia's sentence of August 18, 1989 counted for two points; in addition, there were two points added for a sentence imposed May 21, 1986 for receiving stolen property; two points for a sentence imposed November 23, 1988 for possession of a controlled substance; and two points for commission of the instant offense while on probation under the sentences imposed on May 21, 1986 and November 23, 1988. The total of eight points placed Garcia in criminal history category IV.

The base level for possession of counterfeit notes is nine. As the amount of notes possessed was $26,650, the base level was increased by four. It was then adjusted upward another two levels for obstruction of justice under the sentencing guidelines (USSG) § 3C1.1. The offense level was then reduced by two for acceptance of re-

sponsibility. USSG § 3E1.1(a). The sentencing range based on an offense level of 13 with a criminal history category of IV is 24 to 30 months. The presentence report recommended a sentence of 27 months. The district court sentenced Garcia to 30 months in prison.

Garcia appeals, contending that his abandonment of the fanny pack was not voluntary but a response to an illegal search by the police. He further argues that the sentencing was improper because his flight into the fields was construed as an obstruction of justice, leading to the enhancement of two levels under § 3C1.1. He further argues that his sentence for possession of methamphetamine was for the same conduct of which he was convicted in the instant proceeding, so the sentence should not be treated as a prior sentence. He finally argues that the sentence of November 23, 1988 was not a prior sentence of at least 60 days, because he was placed on probation in that sentencing proceeding.

## ANALYSIS

If Garcia voluntarily abandoned the fanny pack, he has no standing to complain of its search and seizure. *United States v. Jackson,* 544 F.2d 407, 409 (9th Cir.1976). He argues that the intent to abandon implies voluntariness and therefore cannot be brought about by the unlawful conduct of the police. *United States v. Gilman,* 684 F.2d 616, 620 (9th Cir.1982). The question then is whether the police conduct before Garcia fled was unlawful.

There is no question that the traffic stop was justified. The frisk was justified if a reasonably prudent person in the circumstances of the officers would have been warranted in the belief that his safety was in danger. *United States v. Thomas,* 844 F.2d 678, 683 (9th Cir.1988). Dealing with a suspect who had shown a willingness to take great risks at high speeds on the highway, who had shown a distinct aversion to being stopped, and who was a big man on a dark road, reasonably prudent officers would have patted down both the man and the pack that could have contained a weapon. That there was a three

to four minute delay between patting down Garcia and patting the pack indicates that the officers proceeded with some deliberateness and does not destroy the reasonableness of the search of the pack. As in *Michigan v. Long*, 463 U.S. 1032, 1049–52, 103 S.Ct. 3469, 3480–82, 77 L.Ed.2d 1201 (1983), the police officers had a right to examine a hiding-place where a weapon could be concealed that the suspect could reach if he broke away from the officers.

█ The fact that the officer squeezed the bundle in the fanny pack a second time was not an additional search; it was contemporaneous, it constituted no greater intrusion than the initial frisk, and it revealed no additional information. The officer merely squeezed the bundle a second time as a continuation of the frisk in response to Garcia's assertion that the bag contained "nothing."

█ Garcia's argument that the sentence for possession of methamphetamine was imposed for conduct that was part of the instant offense is entirely unpersuasive. He was found with methamphetamine on the occasion of his arrest by the Highway Patrol, but he was only charged with possession of the counterfeit notes. Garcia argues from the sentence in the guidelines, "Cases are considered related if they (1) occurred on a single occasion." USSG § 4A1.2, comment. (n.3). But this comment is meant to explain what is meant by the use of the words "related cases" in 4A1.2(a)(2). There is no indication that the commentary was intended to define the words "conduct not a part of the instant offense" in § 4A1.2(a)(1).

█ Garcia objects that if a sentence of imprisonment is suspended then "sentence of imprisonment" refers only to the portion that was not suspended. USSG § 4A1.2(b)(2). But this argument is effectively nullified by § 4A1.2(k) which provides, "In case of a prior revocation of probation ... add the original term of imprisonment to any term of imprisonment imposed upon revocation." Garcia's probation was revoked on August 18, 1989 before sentencing in the instant case.

█ Finally, Garcia challenges the enhancement of his sentence imposed on the grounds that he had "willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense." USSG § 3C1.1. On this point, Garcia prevails.

The commentary to the section states that it provides an enhancement for a defendant "who engages in conduct calculated to mislead or deceive authorities or those in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges." It is clear from this commentary that what is intended is something different from the instinctive flight of a suspect who suddenly finds himself in the power of the police. "Mere flight in the immediate aftermath of a crime" does not justify the enhancement. *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir.1990). The United States practically concedes as much noting that the sentencing guidelines that will come into effect in November 1990 explicitly exclude flight from the application of this section. Accordingly, the sentence is vacated so that Garcia may be resentenced without the enhancement for obstructing justice.

AFFIRMED AS TO CONVICTION. REVERSED AND REMANDED FOR RESENTENCING.