UNITED STATES of America, Plaintiff–Appellee,

v.

James Louis HAGAN, Defendant–Appellant.

No. 90–1072.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 1990.

Decided Sept. 25, 1990.

Rehearing and Rehearing En Banc Denied Nov. 16, 1990.

Claudia Smith, East St. Louis, Ill., Michael C. Carr, Asst. U.S. Atty., Benton, Ill., for plaintiff-appellee.

James L. Hagan, Ashland, Ky., pro se.

Burton H. Shostak, D.J. Kerns, Moline, Ottsen, Mauzé, Leggat & Shostak, St. Louis, Mo., for defendant-appellant.

Before CUMMINGS, COFFEY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

A jury convicted James Hagan of having conspired to manufacture more than one thousand marijuana plants in violation of 21 U.S.C. §§ 846 and 841(a)(1). Pursuant to the sentencing guidelines, the district court imposed a sentence of 151 months imprisonment. Mr. Hagan appeals both his conviction and the sentence imposed. For the following reasons, we affirm the jury's verdict but remand the case for resentencing.

## I

## BACKGROUND

### A. *Facts*

At trial, the government presented evidence concerning the efforts of James Hagan and others to cultivate marijuana plants on a farm in Enfield, Illinois. Kevin Ervin, a cooperating government witness, testified that he and a friend agreed to purchase the farm and grow marijuana. Ervin stated that he knew other people were involved who actually ran the farm;

one of these individuals showed Ervin how the marijuana was cultivated, concealed between corn plants.

On June 27, 1989, apparently motivated by personal considerations, Ervin informed the Illinois State Police that he and several others were growing marijuana on the farm. On June 28, two state police officers investigated the farm and discovered a large number of marijuana plants growing between the corn. The officers estimated that the field contained approximately 5,000 marijuana plants; law enforcement officials actually recovered 58,012 marijuana plants from the farm.

On June 29, four state police officers and FBI Agent Larry Davis drove to Enfield in unmarked police cars to speak to the residents of the farmhouse. When the cars pulled into the driveway, two individuals inside the house came to the window and looked out. The officers then observed four men exit the house through the back door and begin running toward the cornfield. The officers got out of their cars, identified themselves as police officers, and ordered those who were running to halt. The men did not stop, and the police gave chase. Mr. Hagan ran into the nearest field, looking over his shoulder once at the officer who was pursuing him. After a ten to fifteen second chase, Mr. Hagan was caught and returned to the farmhouse. The other men, who were identified as Jeffrey Mattingly, Joseph Hayden, and Allen Taylor, also were captured. No one was injured, although the police fired several warning shots during the chase.

Once he had been taken back to the farmhouse, Mr. Hagan was advised of his constitutional rights. He indicated that he understood those rights and proceeded to make several statements in response to questions from Agent Davis; this interrogation took place in the presence of one and then another of the state police officers. Mr. Hagan stated that Allen Taylor had asked him to come to the farm and work for $200 per day. Taylor, who was able to drive straight to the farmhouse without asking directions or consulting a map, had brought the defendant to the farmhouse approximately two days earlier. Mr. Hagan explained that he and the three other men had spent the previous two days pulling weeds from the cornfield where the marijuana was located. He acknowledged that there was marijuana in the field but stated that he did not know who owned the farm or the field. Inside the farmhouse, Mr. Hagan pointed out where his belongings were located in one of the bedrooms. He told Agent Davis that he did not smoke marijuana and that the rolling paper, marijuana cigarette butts, and bags of marijuana found inside the house did not belong to him.

On July 5, Agent Davis dictated an investigation report regarding his June 29 questioning of Mr. Hagan; the tape was transcribed on September 25. Defense counsel received a copy of the transcription during the discovery process. On July 26, Mr. Hagan was charged in a one-count indictment with conspiracy to manufacture more than one thousand marijuana plants. After being charged, Mr. Hagan explored the availability of a plea bargain. He made a proffer to Agent Davis on August 2 and 3, based on the agent's promise that any statements given in the proffer would not be used at trial.

## B. District Court Proceedings

Before trial, Mr. Hagan moved to suppress the statements he had made to law enforcement officials on June 29, at the time of his arrest, and on August 2–3, during his proffer. He based this motion on two separate grounds. First, Mr. Hagan claimed that he was interrogated at the time of his arrest in spite of the fact that he had requested an attorney. Second, he contended that an investigation report, purportedly detailing the statements he made on June 29, included statements he made only during the August proffer. Following an evidentiary hearing, the district court concluded, with respect to the first claim, that Mr. Hagan did not invoke his right to counsel at the time of his arrest. With respect to the second argument, the court determined that Mr. Hagan (1) did make at the time of his arrest on June 29 the statements contained in the

investigation report, and (2) repeated during his proffer the statements he had made at the time of his arrest. Based on these findings, the court denied Mr. Hagan's motion to suppress.

In addition to the evidence set forth above, the government introduced at trial a videotape of police officers picking the marijuana from the cornfield. Mr. Hagan initially objected that the tape was prejudicial and irrelevant. Following a sidebar conference, counsel withdrew the objection, agreed to let the government play for the jury a five minute segment of the video, and stipulated to the contents of the remainder of the tape.

Mr. Hagan moved for a judgment of acquittal following the government's case; that motion was denied. He chose not to put on any evidence, and, based on the government's case, the jury found Mr. Hagan guilty. In imposing sentence pursuant to the sentencing guidelines, the district court determined that Mr. Hagan's flight from the farmhouse "posed a substantial risk" to the officer pursuing him, in light of the fact that the officers on the scene did not know "whether there were guns involved or firearms or weapons." Sentencing Tr. at 32. The court concluded that such conduct constituted an obstruction of justice under guideline section 3C1.1 and therefore increased the base offense level by two. Mr. Hagan asserted that he was a minimal participant in the conspiracy and thus entitled to a four-level reduction pursuant to section 3B1.2. The court rejected this claim but awarded Mr. Hagan a two-level reduction for being a minor participant.

## II

## ANALYSIS

A. *Denial of the Defendant's Motions*

1. Motion for judgment of acquittal

In his motion for judgment of acquittal, filed pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, Mr. Hagan maintained that the government had failed to establish that he intentionally joined or knew the object of the charged conspiracy or that he had a stake in the scheme.[1] Mr. Hagan renews these claims on appeal. In reviewing the denial of a motion for judgment of acquittal based on a challenge to the sufficiency of the evidence,

> "[T]he test that the court must use is whether at the time of the motion there was relevant evidence from which the jury could reasonably find [the defendant] guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the government ... bear[ing] in mind that 'it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts and draw reasonable inferences.'" *United States v. Reed,* 875 F.2d 107, 111 (7th Cir.1989) (quoting *United States v. Marquardt,* 786 F.2d 771, 780 (7th Cir.1986)).

*United States v. Reis,* 906 F.2d 284, 292 (7th Cir.1990).

Applying the test to this case, we note that the jury heard testimony that Mr. Hagan (1) knew there was marijuana growing in the field,[2] (2) agreed to pull weeds from between the marijuana and corn plants for $200 a day, (3) moved into the farmhouse, (4) arrived at the farm with Taylor, who obviously was familiar with the farm's location, and (5) helped cultivate the marijuana by pulling weeds from the fields with the three other occupants of the farmhouse. This is ample evidence from which the jury could conclude that Mr. Hagan was a member of the conspiracy; although "mere ... presence at a conspiracy is insufficient to establish the participation element," *United States v. Durrive,* 902 F.2d 1221, 1225 (7th Cir.1990), "a single act is enough evidence if the circumstances permit the inference that the act

---

1. Mr. Hagan does not contest the existence of the conspiracy. Rather, he claims that the government failed to prove that he was a part of the scheme.

2. Thus, Mr. Hagan's reliance on *United States v. Palumbo,* 897 F.2d 245 (7th Cir.1990), where there was no admissible evidence that the defendant knew he was involved in a marijuana operation, is misplaced.

was 'intended to advance the ends of the conspiracy,'" *United States v. Silva*, 781 F.2d 106, 109 (7th Cir.1986) (quoting *United States v. Xheka*, 704 F.2d 974, 989 (7th Cir.), *cert. denied*, 464 U.S. 993, 104 S.Ct. 486, 78 L.Ed.2d 682 (1983)). Here, the jury was entitled to infer that Mr. Hagan's farming efforts promoted the conspiracy. Therefore, we cannot overturn the district court's denial of Mr. Hagan's motion for acquittal and its submission of the case to the jury.

### 2. Motion to suppress

■ Mr. Hagan maintains that the district court should have suppressed statements made to Agent Davis on June 29 and August 2–3. In reviewing the denial of a motion to suppress, "'this court must rely on the district court's factual findings unless they are clearly erroneous.'" *Reis*, 906 F.2d at 288 (quoting *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987)). The evidence presented at the suppression hearing consisted of (1) Mr. Hagan's testimony that he requested an attorney before he was questioned on June 29 and that did not make certain statements until August 2–3, and (2) the testimony of four law enforcement officials, including Agent Davis and the two officers who were present while Agent Davis questioned Mr. Hagan, that the defendant did not request an attorney but did make the statements contained in Agent Davis' report. Based on this evidence, we cannot say that the district court clearly erred by accepting the government's version of the facts. Thus, Mr. Hagan's statements were admissible and the district court properly denied his motion to suppress.

We also reject Mr. Hagan's claim that the government used statements obtained during a proffer in violation of *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). As noted above, the evidence supports the district court's conclusion that Mr. Hagan merely repeated at the proffer statements he had made to Agent Davis at the time of his arrest. We shall not disturb this conclusion, which was based upon the court's credibility determination. *See United States v. Brown*, 900 F.2d 1098, 1103 (7th Cir.1990) (district court's credibility resolutions will not be reassessed on appeal).

### B. *Introduction of Videotape*

■ Finally, Mr. Hagan challenges the district court's admission of the government's videotape. Because the defendant failed to object to the tape at trial, we review this claim for plain error. *See* Fed. R.Crim.P. 52(b); *United States v. Valencia*, 907 F.2d 671, 680 (7th Cir.1990). "In order to show plain error, the alleged error must result in a ' "miscarriage of justice" ' of such magnitude that the defendant probably would have been acquitted absent the error. *United States v. Smith*, 869 F.2d 348, 356 (7th Cir.1989) (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985))." *Valencia*, 907 F.2d at 680. We cannot say, especially under this standard, that admission of the tape was error. Nor can we say that Mr. Hagan probably would have been acquitted had the jury not seen the videotape recording of law enforcement officials picking marijuana plants from the cornfield.[3] Accordingly, we conclude that playing a five minute portion of the tape did not constitute plain error.

### C. *Sentencing Guidelines*

Mr. Hagan challenges his sentence on two grounds. First, he asserts that the district court erred in refusing to find that he was a "minimal" participant in the conspiracy and thus entitled to a four-level reduction under section 3B1.2. He also contests the addition of two levels under section 3C1.1 for obstruction of justice. Our standard of reviewing these claims is well settled. " 'We review a district court's

---

**3.** Mr. Hagan argues that he would have been acquitted but for the tape's admission because he picked only weeds and the tape showed marijuana being picked. This claim has no merit. The government introduced the tape not to demonstrate how the marijuana was picked, but rather to illustrate that there were so many marijuana plants among the rows of corn that it would be impossible to work in the field without seeing them.

factual findings in determining an appropriate criminal sentence for clear error. 18 U.S.C. § 3742(e); *United States v. Herrera,* 878 F.2d 997, 999–1000 (7th Cir. 1989).' " *United States v. White,* 903 F.2d 457, 460 (7th Cir.1990) (quoting *United States v. Jordan,* 890 F.2d 968, 972 (7th Cir.1989)). The sentence imposed will be affirmed if the district court properly applied the guidelines to findings of fact that do not leave us with the "definite and firm conviction that a mistake has been committed." *Id.* (citations omitted).

1. "Minor" versus "minimal" participant

[redacted] Mr. Hagan argues that the district court should have awarded him a four-level "minimal" participant adjustment under guideline section 3B1.2(a) rather than the two-level adjustment he received pursuant to section 3B1.2(b) for being a "minor" participant in the conspiracy.[4] The guidelines stress that classification as a minimal participant under section 3B1.2(a) should be made "infrequently." § 3B1.2 *Application Note* 2; *see Schetz v. United States,* 901 F.2d 85, 87 (7th Cir.1990). This adjustment "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." § 3B1.2 *Application Note* 1. In contrast, "a minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." § 3B1.2 *Application Note* 3.

A district court's determinations under section 3B1.2 will be reversed only if they are clearly erroneous. *United States v. Valencia,* 907 F.2d at 686 (7th Cir.1990); *United States v. Brick,* 905 F.2d 1092, 1095 (7th Cir.1990); *United States v. Tholl,* 895 F.2d 1178, 1186 (7th Cir.1990). We note also that "[t]he determination whether to apply [the minimal participant adjustment pursuant to] subsection (a) or [the minor participant adjustment pursuant to] subsection (b) ... *is heavily dependent upon the facts of the particular case.*" § 3B1.2 (*Commentary, Background*) (emphasis supplied).

In assessing Mr. Hagan's conduct, the district court stressed that pulling weeds from around the marijuana was "a very integral part of the conspiracy." Sentencing Tr. at 31. However, the court also realized that "[i]t's one thing to buy the farm or to rent the farm and plant the material, but it's something else to cultivate it and to make it grow." *Id.* Based on these conclusions, the court determined that Mr. Hagan's role in the conspiracy was minor but "more than minimal." *Id.* Examining the record, we cannot say that this determination constituted clear error. For the two days prior to his arrest, Mr. Hagan lived at the house located on the farm where nearly 60,000 marijuana plants were being cultivated. He knew that marijuana was being grown in the field and helped advance the ends of the conspiracy by picking weeds from around the plants. There is little to distinguish Mr. Hagan's role in this offense from the roles of Jeffrey Mattingly, Joseph Hayden, and Allen Taylor, who picked weeds along with Mr. Hagan. *See Tholl,* 895 F.2d at 1186 (court rejected defendant's claim that he was a minor participant because he did not concoct the scheme for which he was convicted). The district court thus did not abuse its discretion in determining that Mr. Hagan, while less culpable than most of the other participants in the conspiracy, was not "plainly among the least culpable of those involved," § 3B1.2 *Application Note* 1.[5]

4. The guidelines provide in relevant part:

> Based on the defendant's role in the offense, decrease the offense level as follows:
> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

§ 3B1.2.

5. The fact that Mr. Hagan earned $200 a day for his role in the conspiracy surely cannot be considered minimal. "The importance of an individual's role in a drug offense should not be based solely on the amount of that individual's pecuniary gain." *United States v. Brick,* 905 F.2d at 1095 (rejecting defendant's claim that he was minor participant because he profited less than co-conspirator).

### 2. Obstruction of justice

 Mr. Hagan contends that the district court erred in adding two levels to his sentence for willfully obstructing justice. We agree and conclude, under these facts, that Mr. Hagan's sentence improperly was enhanced on the basis of section 3C1.1, Willfully Obstructing or Impeding Proceedings. That section provides:

> If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.

Examples of acts justifying application of this section include the destruction of evidence, the furnishing of false statements to the probation office or sentencing judge, and the intimidation of witnesses. § 3C1.1 *Application Note* 1. Although flight from arrest is not given as a specific example, the list is not exclusive. *Id.; see United States v. White*, 903 F.2d 457, 461 (7th Cir.1990).[6] Here, the district court applied section 3C1.1 based on Mr. Hagan's flight from the farmhouse and on the court's finding that, because the police did not know whether Mr. Hagan was armed, his flight "posed a substantial risk" to those pursuing him. Sentencing Tr. at 32.

We have discovered only three cases, including one from this circuit, that have examined whether flight from the arresting or investigating officer supports the application of section 3C1.1.[7] In *United States v. White*, 903 F.2d 457, 459–60 (7th Cir.1990), the defendant had escaped from a medium-security prison and gone on a crime spree. When confronted by federal officials, he attempted to flee. He eventually was caught, but only after a 20–minute, high-speed auto chase through residential areas at speeds of 80–90 m.p.h., during which he ran red lights and stop signs, drove on sidewalks, and endangered the lives of three pedestrians and a motorcycle officer. *Id.* at 460. The district court enhanced the defendant's sentence by two levels under section 3C1.1 for obstruction of justice.

On appeal, Mr. White maintained that flight alone could not support the obstruction enhancement. *Id.* at 460–61. The court determined that flight, *in conjunction with other factors,* could provide a basis for the application of section 3C1.1: under the facts, the court found that the defendant's evasion of arrest, combined with the fact that his conduct threatened the lives of police officers and innocent bystanders, constituted obstruction of justice. *Id.* at 462–63. Accordingly, the application of section 3C1.1 was affirmed. However, the court added that

6. We note that, effective November 1, 1990, the application notes to section 3C1.1 will provide that avoiding or fleeing from arrest is conduct to which section 3C1.1 is not intended to apply. Section 3C1.2 will be added to provide for a two-level enhancement where the defendant's flight from a law enforcement officer recklessly created a substantial risk of death or serious bodily injury to another person. *See* Amendments to the Sentencing Guidelines, 55 Fed.Reg. 19,188 & 19,202–03 (1990).

7. The issue has been raised in several Fifth Circuit cases, although that court specifically has reserved judgment on the question. *See United States v. Pierce*, 893 F.2d 669, 677 (5th Cir.1990) (court need not address defendant's claim that flight alone is insufficient to constitute obstruction of justice where evidence establishes that defendant also attempted to influence a witness' testimony); *United States v. Velasquez–Mercado*, 872 F.2d 632, 636 n. 3 (5th Cir.) (court did not rely on defendant's flight to affirm obstruction enhancement, but on fact that defendant threatened witnesses and lied to probation officer and court about his role in the crime; thus, "it remains an open question whether fleeing or hiding, in themselves, can constitute obstruction of justice"), *cert. denied,* —— U.S. ——, 110 S.Ct. 187, 107 L.Ed.2d 142 (1989); *United States v. Franco–Torres*, 869 F.2d 797, 800 (5th Cir.1989) (court need not decide whether effort to evade arresting officer constitutes obstruction of justice where defendant also shot at agent chasing him and then threw away gun to hide it from investigating officers). In addition, at least one district court has applied section 3C1.1 based solely on the defendant's flight, but the enhancement was not contested nor was the issue raised on appeal. *See United States v. Davis*, 881 F.2d 973, 974 n. 1 (11th Cir.1989) (in explaining how defendant's offense level was calculated, court noted that district court had increased offense level by two for obstruction of justice because defendant had fled from his home when confronted by the police), *cert. denied,* —— U.S. ——, 110 S.Ct. 735, 107 L.Ed.2d 753 (1990).

mere flight without the attendant almost mortal circumstances in this case, including but not limited to the high speed chase through a heavily populated residential area endangering the lives, limbs and property of innocent pedestrians and law enforcement personnel, might not constitute "obstruction of justice."

*Id.*

The court in *White* relied in part on cases from the Fifth Circuit that upheld the application of section 3C1.1 where the defendant's flight was combined with other obstructive conduct.[8] The court also relied on *United States v. Stroud*, 893 F.2d 504, 506 (2d Cir.1990), where the Second Circuit concluded that "mere flight from arrest, by itself, does not constitute obstruction" within the meaning of section 3C1.1. In *Stroud*, the defendant fled from the bank he was attempting to rob and was pursued by numerous police officers. During his flight, he ran across rooftops, pulled loose twice from officers who had apprehended him, and jumped a fence. He was arrested only after he ran into traffic and found himself surrounded by police. *Id.* at 505. In analyzing a challenge to the obstruction enhancement, the court stressed that section 3C1.1 "contains a clear *mens rea* requirement that limits its scope to those who 'willfully' obstruct or attempt to obstruct the administration of justice[;] 'willfully,' as used in section 3C1.1, requires that the defendant consciously act with the *purpose* of obstructing justice." *Id.* at 507 (emphasis in original). Based on this conclusion, the court held that "mere flight in the immediate aftermath of a crime, without more, is insufficient to justify a section 3C1.1 obstruction of justice enhancement." *Id.*

The Ninth Circuit also has addressed this issue. In *United States v. Garcia*, 909 F.2d 389, 390 (9th Cir.1990), the defendant was stopped for speeding. When the police became interested in the "fanny pack" he had been wearing around his waist, which was found to contain over $25,000 in counterfeit money, the defendant fled. *Id.* at 390–391. Based on his flight, the district court added two levels to Mr. Garcia's sentence. *Id.* at 391. On appeal, the Ninth Circuit determined that the defendant's flight could not be construed as an obstruction of justice because section 3C1.1 was intended to apply to "something different from the instinctive flight of a suspect who suddenly finds himself in the power of the police." *Id.* at 392 (citing *Stroud*). Accordingly, the court vacated the defendant's sentence and directed that he be resentenced without the section 3C1.1 enhancement. *Id.* at 392.

In light of the principles articulated in these decisions, it is clear that the facts presented in this case do not support the application of section 3C1.1. The district court enhanced Mr. Hagan's sentence based on his flight from the farmhouse. Although the officers did not know when they pursued him that he was unarmed, their lives never were endangered. The situation certainly was not "almost mortal" as it was in *White*, 903 F.2d at 462. Mr. Hagan's flight was, as in *Garcia*, the instinctive flight of a criminal about to be caught by the law. Under these facts, we do not find that Mr. Hagan "willfully impeded or obstructed ... the administration of justice." § 3C1.1. As such, it was error for the district court to add two levels to his sentence under section 3C1.1.

## Conclusion

For the foregoing reasons, we affirm the defendant's conviction. However, because the district court misapplied the sentencing guidelines, the case is remanded for resentencing consistent with this opinion.

---

**8.** *See supra* note 7; *see also United States v. Tellez*, 882 F.2d 141, 143 (5th Cir.1989) (obstruction enhancement affirmed where defendant's attempted flight endangered lives of arresting officer and innocent bystanders); *United States v. Galvan–Garcia*, 872 F.2d 638, 641 (5th Cir.) (obstruction enhancement affirmed where defendant fled from Border Patrol agents and attempted to conceal drugs by tossing bags of marijuana out car window), *cert. denied,* —— U.S. ——, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989).

AFFIRMED · IN PART, REVERSED AND RE-MANDED IN PART.