928 F.2d 1133
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Billy W. COLEMAN, Defendant-Appellant.
 No. 90-6065.
 United States Court of Appeals, Sixth Circuit.
 March 21, 1991.
 
 On Appeal from the United States District Court for the Western District of Tennessee, No. 89-20315; Gibbons, J.
 W.D.Tenn.
 AFFIRMED.
 Before BOYCE F. MARTIN, Jr. and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Billy Wayne Coleman timely appeals the judgment of conviction and sentence entered after a jury convicted him of possession of cocaine base and cocaine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). For the reasons that follow, we affirm.
 
 I.
 
 2
 Prior to trial, defendant moved to suppress incriminating statements allegedly made by him at the time of his arrest. The following facts come from testimony at the suppression hearing.
 
 
 3
 After Memphis police officers Bibbs and Thweatt made a controlled purchase of cocaine from the defendant through an informant at the Royal Oaks Motel in Memphis, Tennessee, the officers arranged for defendant to learn that they were en route to his motel room. Defendant fled the room accompanied by a female friend later identified as Terri Bowens. Defendant was stopped after a short, high-speed chase, during which a yellow bag was seen flying from the passenger window of the vehicle defendant was driving. Officer Bibbs used some force to subdue defendant as he was still trying to escape after exiting the vehicle. Officer Thweatt took the female passenger into custody.
 
 
 4
 After subduing defendant, Officer Bibbs found the yellow bag, and it was full of drugs. While Officer Bibbs was taking photographs of the drugs, and before he informed defendant that he was under arrest or advised defendant of his Miranda rights, defendant blurted out: "[Terri Bowens] didn't know nothing [sic] about it. It was all mine." As defendant was not being interrogated, the statement was not in response to questioning.
 
 
 5
 Defendant was transported to the police station and advised of his rights. After that, he reiterated that the drugs were his and that the girl was not involved. Defendant eventually persuaded the police to set the girl free; however, defendant refused to make a written statement.
 
 
 6
 Both defendant and Ms. Bowens claim that they left the motel because of a call from the front desk advising them that it was time to check out. Defendant and Bowens also claim that they were mistreated by the police after they were stopped. Defendant was supposedly kicked in the ribs and struck in the ear with a gun, and Ms. Bowens was supposedly "snatched" out the window of the vehicle and thrown to the curb.
 
 
 7
 A suppression hearing concerning defendant's oral statements was held before a magistrate, and the magistrate rejected defendant's and Ms. Bowens' testimony finding it less credible than the testimony of Officer Bibbs. The magistrate concluded that there was "no police conduct or overreaching which coerced defendant Billy Wayne Coleman into giving his oral confession." Instead, "[d]efendant has his own personal motive (to obtain the release of his girl friend) for giving these [sic] statement, and thus, it is submitted, the statements were not coerced." The district court adopted the magistrate's report and recommendation and added:
 
 
 8
 [T]o the extent that the magistrate's report does not cover the issue of voluntariness of the statements made by defendant Coleman, as defendant contends, the court finds that the statements made were voluntarily [sic]. Defendant's statements were freely blurted out, not given in response to questioning and were not made under any type of threat of force or reprisal.
 
 
 9
 Thus, the district court denied the motion to suppress.
 
 
 10
 After defendant's conviction by a jury, the district court held a sentencing hearing in which it adopted the findings of fact set forth in the presentence report and concluded that a two-point enhancement of defendant's offense level was appropriate under section 3C1.1 of the guidelines. The court explained:
 
 
 11
 [T]he proof was quite clear at this trial that the drugs did belong to Mr. Coleman and that there was no criminal involvement on behalf ... of his companion in the car. Thus, while there is no direct proof as to who threw the drugs from the vehicle, there is evidence, circumstantial evidence from which the Court can conclude that the drugs were either thrown by Mr. Coleman or if not thrown by him, that he procured or caused them to be thrown. And under those circumstances, the Court believes that the two-point enhancement is warranted.
 
 
 12
 There is developing case law also that indicates that flight in and of itself is not enough to impose the obstruction of justice enhancement.... [W]ithout finding that flight alone in this case amounts to obstruction of justice, the Court would note that Mr. Coleman was, in fact, the individual who was fleeing by driving his vehicle at a high rate of speed in trying to elude apprehension. And under those circumstances, that is just additional evidence that supports his involvement in attempting to get rid of the drugs.
 
 
 13
 The principal issues presented in this appeal are (1) whether the district court erred in failing to grant defendant's motion to suppress his incriminating statements, and (2) whether the district court erred in granting a two-point enhancement for obstruction of justice on the basis that defendant attempted to conceal or destroy material evidence during a high-speed chase.
 
 II.
 A. The Statements
 
 14
 The district court's factual findings made in consideration of the motion to suppress evidence must be upheld unless they are clearly erroneous. United States v. Coleman, 628 F.2d 961, 963 (6th Cir.1980). However, the ultimate question of the voluntariness of an incriminating statement is a mixed question of fact and law subject to de novo review. See United States v. Murphy, 763 F.2d 202, 206 (6th Cir.1985), cert. denied, 474 U.S. 1063 (1986).
 
 
 15
 Defendant contends that his violent arrest and the violent treatment of his female companion overcame his free will. Citing United States v. Brown, 557 F.2d 541 (6th Cir.1977) (hostile arrest inflicting extensive injury in presence of 15 to 30 officers followed by confession in back of patrol car where prisoner was seen crying, screaming, and thrashing about), and United States v. Murphy, 763 F.2d 202, 205-06 (6th Cir.1985) (confession made during attack by police dog which inflicted severe wounds), cert. denied, 474 U.S. 1063 (1986), defendant argues that the focus should not be on whether there was police misconduct but on the state of mind of the person who makes the incriminating statement.
 
 
 16
 The government correctly points out that the credibility determinations and other factual findings below show that defendant's arrest was not as violent as he would lead the court to believe. Moreover, the findings below cast strong doubt on whether Ms. Bowens was treated harshly. Even if Bowens was snatched from the window of the automobile, the totality of the circumstances, being in the early morning hours after a high-speed chase and without contemporaneous interrogation, confirms the finding that the defendant's statements were "not made under any type of threat of force or reprisal." Thus, Brown and Murphy are distinguishable from this case on the facts as found by the district court.
 
 
 17
 Moreover, to the extent Brown and Murphy allow a finding of involuntariness without police overreaching, they have been limited by the Supreme Court's holding in Colorado v. Connelly, 479 U.S. 157 (1986). In that case, the Supreme Court made it clear that coercive police activity is a necessary predicate to finding that a confession is involuntary. The Court also made it clear that "[t]he voluntariness of a waiver of [the Fifth Amendment] privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." Connelly, 479 U.S. at 170. It should also be noted that in Murphy we interpreted Townsend v. Sain, 372 U.S. 293 (1963), as a case showing that a statement could be involuntary even in the absence of police misconduct. Murphy, 763 F.2d at 208. However, the Supreme Court interpreted Townsend as involving an "integral element of police overreaching." Connelly, 479 U.S. at 164.
 
 
 18
 The proper analysis in this circuit for testing the voluntariness of a confession is found in McCall v. Dutton, 863 F.2d 454, 459 (6th Cir.1988), cert. denied, 490 U.S. 1020 (1989):
 
 
 19
 The test for voluntariness of a confession involves three factors. Threshold to the determination that a confession was "involuntary" for due process purposes is the requirement that the police "extorted [the confession] from the accused by means of coercive activity." Once it is established that the police activity was objectively coercive, it is necessary to examine petitioner's subjective state of mind to determine whether the "coercion" in question was sufficient to overbear the will of the accused. Finally, petitioner must prove that his will was overborne because of the coercive police activity in question. If the police misconduct at issue was not the "crucial motivating factor" behind petitioner's decision to confess, the confession may not be suppressed.
 
 
 20
 Id. (citations omitted).
 
 
 21
 Under the analysis set forth in Dutton, the police activity in this case was not objectively coercive. Under the circumstances, the police were justified in promptly bringing the suspects under control. Although force was used, at least against defendant, there is no evidence to indicate that it was used as a threat or promise or in conjunction with any activity that the officers should have known was reasonably likely to produce a confession.
 
 
 22
 Even assuming arguendo that the force was objectively coercive, we hold that the force was not sufficient to overbear the defendant's will. The fact that the statements were not given in response to questioning strongly weighs in favor of finding voluntariness. See Murphy, 763 F.2d at 207. The force was not used in conjunction with questioning, and it was not so great or prolonged as to inflict severe injury or generate fear sufficient to overcome defendant's will. Cf. Murphy, 763 F.2d at 204 (severe dog bites); Brown, 557 F.2d at 553 ("extensive" injuries to defendant's face, etc.). Defendant's ability to maintain his resolve against giving a written statement also weighs in favor of finding that his statements were voluntarily made. See Dutton, 863 F.2d at 460. Moreover, the assertions that fear overcame defendant's will are suspect since defendant repeated his incriminating statements when he and Ms. Bowens were in the relative safety of the police station far away from the scene of the alleged "violent arrest."
 
 B. Sentencing
 
 23
 The parties agree that the district court's factual findings underlying sentencing must be supported by a preponderance of the evidence, see United States v. Walton, 908 F.2d 1289, 1301 (6th Cir.), cert. denied, 111 S.Ct. 530 (1990), and that those findings will not be overturned unless they are clearly erroneous. United States v. Ransbottom, 914 F.2d 743, 747 (6th Cir.), cert. denied, 111 S.Ct. 439 (1990). Defendant, however, argues that there was not a preponderance of evidence to show that he threw the drugs from the vehicle or caused them to be thrown. Defendant argues that his companion's innocence shows only that the "odds" favored the possibility that he threw the drugs or had them thrown. This argument, if carried to its logical conclusion, would completely undercut the use of circumstantial evidence.
 
 
 24
 The preponderance of evidence standard only requires that a factual finding be based upon evidence that makes the existence of the fact "more likely than not." Walton, 908 F.2d at 1302. Given that it is clear that the drugs were the defendant's and that he was willing to engage in a high-speed flight from the police to avoid being caught, it is more probable than not that defendant threw his drugs from the window or caused them to be thrown. Thus, the district court's finding in this regard is supported by the preponderance of the evidence and is not clearly erroneous.
 
 
 25
 Defendant's next argument is that even if he did throw the drugs from the window, this act does not rise to the level of obstruction of justice for the purpose of enhancing his sentence under section 3C1.1 of the guidelines. The version of section 3C1.1 in effect at the time of defendant's sentencing provides, in relevant part:
 
 
 26
 If the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense, increase the offense level by 2 levels.
 
 
 27
 Application notes to that section state that "destroying or concealing material evidence, or ... directing or procuring another person to destroy or conceal material evidence, or attempting to do so," may provide a basis for the enhancement.
 
 
 28
 Defendant relies heavily upon a November 1990 amendment to section 3C1.1 which he contends shows the enhancement was not intended to apply to conduct such as his. We are not persuaded by defendant's reliance upon the post-sentencing amendments. This case involves more than flight alone; it involves an attempt to dispose of drugs during the context of a high-speed chase. It is not at all clear that enhancement would be improper with this combination of factors even under the amended version. See United States v. Hagan, 913 F.2d 1278 (7th Cir.1990) (pre-amendment case recognizing that mere flight from arrest was insufficient for enhancement but was sufficient when combined with other obstructive behavior); Id. at 1284 n. 6 (noting that under amended version high-speed flight can justify enhancement for reckless endangerment).
 
 
 29
 At any rate, under the guidelines "in effect on the date the defendant [was] sentenced," 18 U.S.C. Sec. 3553(a)(4), defendant's attempt to dispose of the drugs (by his own actions or by directing another) in combination with the high-speed chase was sufficient to invoke the enhancement. See, e.g., United States v. Jackson, No. 90-1609 (6th Cir. Feb. 1, 1991) (unpublished opinion) (attempt to throw bags of cocaine into the toilet as police entered home); United States v. Dortch, 923 F.2d 629 (8th Cir.1991) (tossing cocaine out the window of a vehicle without an attempt to flee); United States v. Galvan-Garcia, 872 F.2d 638, 641 (5th Cir.) (tossing bags of drugs out of window of vehicle during high-speed chase), cert. denied, 110 S.Ct. 164 (1989). Accordingly, we find no error in the enhancement of defendant's sentence for obstruction of justice.
 
 III.
 
 30
 For the reasons stated, the judgment of the district court is AFFIRMED.