**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Felipe MADERA–GALLEGOS, aka Guadalupe Gallegos; Carla Rosa Gallegos, aka Clemencia Sandoval–Dominguez, Defendants–Appellants.**

**Nos. 90–50108, 90–50127.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 4, 1991.

Decided Sept. 18, 1991.

---

Gerald E. Utti, Encinitas, Cal., Lisa J. Damiani, San Diego, Cal., for defendants-appellants.

Laura J. Birkmeyer, Asst. U.S. Atty., San Diego, Cal., for plaintiff-appellee.

Before GOODWIN, PREGERSON and ALARCON, Circuit Judges.

PREGERSON, Circuit Judge:

Felipe Madera–Gallegos (Felipe) and Carla Rosa Gallegos were convicted of conspiracy to possess heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. They appeal their sentences under the Sentencing Guidelines. Carla Rosa contends that the district court erred in applying the 2-level obstruction of justice enhancement and in not giving her the 4-level minimal participant reduction. Her ex-husband, Felipe, appeals only the obstruction of justice enhancement. We affirm in part; reverse and remand in part.

## BACKGROUND

On November 23, 1988, an undercover U.S. Customs Agent, Elias Bazan, negotiated to purchase ten ounces of heroin from Felipe Madera–Gallegos at a Shell gas station in San Diego, California. Felipe's wife at that time, Carla Rosa, remained in the car some distance from Felipe and the agent.

During the negotiations, Felipe told the agent that he could provide a sample of the heroin. Felipe went to the car and conferred with Carla Rosa, who immediately thereafter drove away from the gas station. Carla Rosa returned about 15 minutes later. She pulled a sample of heroin from a lipstick case and handed it to Felipe, who in turn handed the sample to the agent.

On November 25, 1988, agent Bazan made arrangements by telephone with Felipe to sell ten ounces of heroin and five kilograms of cocaine on November 28, 1988. On that date, at the same gas station, Felipe told the agent that he had the heroin and that Carla Rosa was on her way back from Los Angeles with the cocaine. Felipe left the gas station but told the agent that he would have someone return in fifteen minutes with the heroin.

Forty-five minutes later, Felipe returned to the gas station and told the agent that a young man would give him the heroin in a few minutes. Felipe told the agent to give the young man the money for the heroin and to call him at home in thirty minutes. The heroin exchange was made and three co-defendants other than the Gallegos were arrested. The agents attempted to locate and arrest Felipe, but could not find him.

Later that evening, DEA agents conducted a search of the Gallegos' residence pursuant to a search warrant. They found the lights on and food cooking on the stove, which indicated to them that someone had fled in a hurry.

During the next nine months, agent Latocki purportedly spent approximately 200 hours searching for the Gallegos. According to the government, during the ninth month, agent Latocki learned that Carla Rosa had returned to the United States from Mexico. He did not arrest her immediately, but followed her to locate Felipe. The Gallegos were both arrested around August 31, 1989.

After his arrest, Felipe admitted that he knew the agents had been searching for him because of the heroin deal. He stated that had been residing in Tecuala, Najarit, Mexico. He explained that he returned to the United States to persuade Carla Rosa to return to Mexico with him. They had separated several months earlier.

Felipe pled guilty to a charge of conspiracy to possess cocaine and heroin with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. After an evidentiary hearing, the district court found that Felipe's "flight" from arrest justified increasing his offense level by two levels for obstruction of justice. The court sentenced him to 97 months imprisonment, the bottom of his guideline range.

Carla Rosa agreed to be tried by the district court based on stipulated facts. She was convicted of conspiracy to possess a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court increased Carla Rosa's offense level by two levels for obstruction of justice, but decreased it downward by two levels for being a minor participant in the conspiracy. She was sentenced to 63 months imprisonment, the bottom of her guideline range.

1. We apply the version of the Guidelines in effect at the date of sentencing, in this case, the 1989 version. See 18 U.S.C. §§ 3553(a)(4) and (5); United States v. Turner, 898 F.2d 705, 709 n. 1 (9th Cir.), cert. denied, — U.S. —, 110 S.Ct.

## DISCUSSION

### I. § 3C1.1—Obstruction of Justice

Both Felipe and Carla Rosa appeal the district court's decision to increase their offense level by two levels for obstructing justice under § 3C1.1 of the Sentencing Guidelines. The Gallegos contend that the sentencing court impermissibly applied the obstruction of justice adjustment solely because they did not turn themselves in for arrest. We review de novo conclusions of law concerning the application of the Guidelines, while reviewing the district court's underlying factual findings for clear error. United States v. Howard, 894 F.2d 1085, 1087 (9th Cir.1990); United States v. Lofton, 905 F.2d 1315, 1316 (9th Cir.) ("district court's determination of whether a defendant obstructed justice is reviewed as a factual finding under the clearly erroneous standard"), cert. denied, — U.S. —, 111 S.Ct. 365, 112 L.Ed.2d 328 (1990).

Section 3C1.1 provides:
If the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense, increase the offense level by 2 levels.

United States Sentencing Commission, Guidelines Manual [hereinafter U.S.S.G.], § 3C1.1 (Nov. 1990).[1]

The Gallegos contend that the district court erred in increasing their offense level for obstructing justice for two reasons: (1) the district court erred in finding that they "fled" from arrest and (2) flight from arrest alone does not constitute obstruction of justice under § 3C1.1.

The district court made the following finding concerning the defendant's flight from arrest:
the first issue before me is whether or not this conduct after the transaction was stopped by law enforcement officers equals a two-point obstruction of justice.

2574, 109 L.Ed.2d 756 (1990). Section 3C1.1 has been amended effective November 1, 1990 in a way that would not change the result in this case. For the convenience of the reader, we thus quote the 1990 Guidelines.

*I make the finding that what occurred was flight by both defendants.* Now, the only common sense interpretation of the facts that I've heard, as well as those that are in the stipulated facts and in the probation report, is that the two Defendants fled immediately after—or shortly after the transaction, when, in fact, Mr. Gallegos realized that something was wrong with the transaction.

In reaching its conclusion, the court considered that: (1) Felipe told the agent to call him at his home thirty minutes after the sale was complete; (2) the parties anticipated that a sale of cocaine would take place later in the day; and (3) the home was left with the lights on and food cooking on the stove. The district court's finding of flight is amply supported by the evidence; the district court did not commit clear error.

The defendants next argue that flight without more does not constitute obstruction of justice under § 3C1.1. The defendants cite the commentary to the 1989 Guidelines, which provides a non-exhaustive list of examples of conduct to which the adjustment applies. U.S.S.G. § 3C1.1, comment. (n. 1) (Nov. 1989). The list does not include flight from arrest. The commentary is not conclusive, however, because it is not meant to be exhaustive, but simply to provide examples.

Application Note 4(d) to the 1990 Guidelines is more telling. That note provides, in pertinent part:

> The following is a non-exhaustive list of examples of the types of conduct that ... *do not warrant* application of this enhancement, but ordinarily can appropriately be sanctioned by the determination of the particular sentence within the otherwise applicable guideline range:
>
>   *   *   *   *   *   *

(d) avoiding or fleeing from arrest (*see, however,* § 3C1.2 (Reckless Endangerment During Flight)).

U.S.S.G. § 3C1.1, comment. (n. 4) (Nov. 1990) (emphasis added).[2]

■ We recently decided en banc the weight to be given the commentary to the guidelines. *United States v. Anderson,* 942 F.2d 606 (9th Cir.1991) (en banc). We held that "courts should always consider the commentary" and "should construe a guideline and its commentary so as to be consistent, if that is possible." *Id.* at 612. In this case, the application note and the guideline are consistent. The note gives "avoiding or fleeing from arrest" as an illustration of conduct that would not warrant an obstruction of justice adjustment. The note strongly suggests that the defendants' conduct in this case would not support an increase in offense level for obstruction of justice.

Case law supports this conclusion. "Mere flight in the immediate aftermath of a crime" is not sufficient to apply the § 3C1.1 adjustment. *United States v. Garcia,* 909 F.2d 389, 392 (9th Cir.1990) (quoting *United States v. Stroud,* 893 F.2d 504, 507 (2d Cir.1990)); *accord United States v. John,* 935 F.2d 644, 648 (4th Cir. 1991) (dicta); *United States v. Hagan,* 913 F.2d 1278, 1285 (7th Cir.1990). But flight, coupled with other "obstructive" conduct, may justify the § 3C1.1 enhancement. *See Mondello,* 927 F.2d 1463, 1465–67 (9th Cir. 1991) (§ 3C1.1 enhancement appropriate where defendant "played cat-and-mouse game of avoiding authorities"); *United States v. Paige,* 923 F.2d 112, 114 (8th Cir.1991) (endangering the lives of others and destroying incriminating evidence in flight from authorities adequately supports enhancement); *United States v. White,* 903 F.2d 457, 461–62 (7th Cir.1990) (finding obstruction of justice where flight involved high-speed auto chase); *United States v.*

---

**2.** Although Application Note 4 did not become effective until after the defendants were sentenced, the purpose of this commentary is to clarify the operation of § 3C1.1—not to make substantive changes. U.S.S.G.App. C (amendment 347) (Nov. 1990); *see also United States v. Garcia,* 909 F.2d 389, 392 (9th Cir.1990) (referring to the commentary of the 1990 Guidelines in concluding that flight did not justify an enhancement under the 1989 version of § 3C1.1); *United States v. Mondello,* 927 F.2d 1463, 1472 n. 1 (9th Cir.1991) (Beezer, J., dissenting) ("It is therefore reasonable to assume that the new Notes [to § 3C1.1] serve to clarify the manner in which the drafters intended the section to be applied even prior to the latest amendments.").

*Franco–Torres,* 869 F.2d 797, 800 (5th Cir. 1989) (enhancement applied because defendant shot at officer while fleeing and then attempted to hide gun); *cf.* U.S.S.G. § 3C1.2 (effective Nov. 1, 1990) (2-level increase "[i]f the .defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer").

Two of our cases illustrate this distinction. In *Garcia,* the defendant when caught with a bag containing counterfeit money ran into a nearby field where he eventually surrendered to authorities. 909 F.2d at 390–91. We held that this type of "instinctive flight of a suspect" is not covered by § 3C1.1. *Id.* at 392.

On the other hand, in *Mondello,* we upheld the district court's finding that the defendant obstructed justice under § 3C1.1. Mondello was arrested three weeks after commission of the crime and knew that he was expected to surrender to authorities. "Instead, he decided to hide out for two weeks and then engage in a forty minute ruse to avoid capture." 927 F.2d at 1467 n. 4. Although we noted that Application Note 4(d) to the 1990 Guidelines expressly excludes flight from arrest, "[w]e decline[d] to adopt a cramped reading of [Application] note 4(d) ... where there was an attempt to escape justice and not just the scene of a crime." *Id.*

This case, however, does not contain the same aggravating circumstances that existed in *Mondello.* Mondello was arrested, knew that he was expected to turn himself in, and then "played a cat-and-mouse game of avoiding the authorities." *Id.* at 1467. Here the Gallegos were not arrested and fled to Mexico immediately after the drug deal turned sour. There is no evidence that, once found, they made any efforts to impede authorities.

The plain language of Application Note 4(d) explains that the enhancement does not apply to defendant's conduct in "avoiding or fleeing arrest." Although the Gallegos nine month absence was more "obstructive" than the defendant's short run from authorities in *Garcia,* Application

Note 4(d) does not restrict its application to flights of short durations. Moreover, a defendant's failure to surrender to.authorities is already considered under the guidelines in the acceptance of responsibility adjustment. *See* U.S.S.G. § 3E1.1, comment. (n. 1(d)) ("voluntary surrender to authorities promptly after commission of the offense" is one consideration in determining whether acceptance of responsibility adjustment applies). We therefore hold that the obstruction of justice adjustment cannot be applied under the facts of this case.

■ As an alternative ground for its decision, the district court stated that defendants' flight would justify a 2-level upward departure. "[T]he district court may not depart from the applicable Guideline range unless it identifies an aggravating circumstance of a kind or to a degree the Commission did not adequately take into account when formulating the Guidelines." *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir.1991); *see also* U.S.S.G. § 5K2.0. Here, in Application Note 4(d), the Sentencing Commission explicitly considered—and rejected—the aggravating circumstance (i.e., flight from arrest) identified by the district court. Thus, because flight from arrest is a factor adequately considered by the Sentencing Commission in formulating the Guidelines, it cannot be used as a basis for departure. *Cf. United States v. Ward,* 914 F.2d 1340, 1348 (9th Cir.1990) ("district court may not depart upward based upon the defendant's obstruction of justice unless [the conduct] was significantly more egregious than the ordinary cases of obstruction listed in the application notes to § 3C1.1, of which the Commission has taken full account").

## II. § 3B1.2—Mitigating Role

Pursuant to a stipulation, the government recommended a 4–level reduction in Carla Rosa's offense level for her minimal participation in the drug transaction. The district court, however, found that her conduct justified only a 2–level reduction for minor participant status. Whether Carla Rosa is a minor or minimal participant under § 3B1.2 is a factual determination this

court reviews for clear error. *United States v. Sanchez–Lopez*, 879 F.2d 541 (9th Cir.1989).

Section 3B1.2 provides:

Based on the defendant's role in the offense, decrease the offense level as follows:

(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.

(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels.

U.S.S.G. § 3B1.2 (Nov. 1990).

 The district court made the following finding with respect to Carla Rosa's role in the offense:

Statements in furtherance of the conspiracy that Mr. Gallegos made were the fact that his wife—and we know that that's [Carla Rosa]—was essentially his partner. She was his partner. He also said that she was the one that was going to Los Angeles to bring down the cocaine. They lived together. In that cupboard, by the Mazola, was a gram scale. There was a drawer in the kitchen that was devoted to hypodermic needles, baggies, and balloons.

\* \* \* \* \* \*

Then, the transaction where they were negotiating with Agent Bazan....

[Carla Rosa] did, in fact, go to the residence, and come back with the heroin sample in the lipstick container. She removed the heroin sample from the lipstick container, and gave the plastic package that you could see through to the agent, which contained the sample. Thereafter, she was there with the window down for about 15 minutes, while the negotiations continued. I also note that her statements to the probation officer have been untruthful. So, I cannot make a finding that she is plainly among the least culpable, given those facts.

Carla Rosa's argument that the court committed clear error in denying her the 4–

level minimal participant reduction is without merit. The commentary notes that the 4–level reduction is intended to be used infrequently. U.S.S.G. § 3B1.2, comment. (n. 2). Carla Rosa gives no reason sufficient to upset the court's factual finding. The court's decision is well supported by the evidence.

As explained in part I, we reverse Felipe and Carla Rosa's sentences, and remand for resentencing without the obstruction of justice enhancement.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.