952 F.2d 407
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Michael CAGAN, Defendant-Appellant.
 No. 91-50053.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 4, 1991.*
Decided Jan. 9, 1992.
 
 Before JAMES R. BROWNING, BOOCHEVER and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 George Michael Cagan appeals from his sentence, alleging that the district court erred in applying an upward adjustment of four levels for his role as an organizer or leader of criminal activity under § 3B1.1(a) of the Sentencing Guidelines. We affirm.
 
 
 3
 * Cagan owned a tele-marketing company from September 1989 to February 1990 and commissioned employees to invite potential customers to purchase advertising specialities. Customers making a purchase were promised a $5,000 or $10,000 bond as a premium if they paid certain costs and expenses, generally ranging around $800. Although some customers were sent bond registration forms and credit vouchers towards advertising products, no customer ever received a bond.
 
 
 4
 Cagan was aware of complaints from customers that one of his employees, Ricardo Bendanelli, was misrepresenting the premium to customers as $10,000 cash. An FBI interview with a former employee indicated that at least two other employees had also misrepresented the premium as cash. Cagan, however, claimed that he did not guide or encourage these misrepresentations.
 
 
 5
 On July 3, 1990, pursuant to a plea agreement, Cagan pled guilty to one count of aiding and abetting wire fraud, in violation of 18 U.S.C. §§ 1343 and 2. At the plea hearing, Cagan's attorney stated that Cagan was pleading guilty because he failed to terminate Bendanelli despite Cagan's knowledge of Bendanelli's misrepresentations. The government accepted the factual foundation of this statement. The subsequently issued presentence report, however, described the misrepresentations as being guided by Cagan and recommended a four level upward adjustment for his organizing or leadership role in the criminal activity. Cagan filed objections to these factual findings, arguing that he did not devise a scheme to defraud customers but merely failed to supervise adequately an employee he knew was making misrepresentations.
 
 
 6
 At the sentencing hearing on December 3, 1990, the district court calculated a base offense level of thirteen, after adding two points for the number of victims and subtracting two points for acceptance of responsibility. Accepting the presentence report's conclusion, the court added four points for Cagan's organizing role and arrived at a total offense level of seventeen. Because Cagan's criminal history category was I, his guideline sentencing range was twenty-four to thirty months. The district court sentenced Cagan to twenty-four months in prison and three years supervised release. This appeal followed.[1]
 
 II
 
 7
 Cagan argues that the government failed to prove by a preponderance of the evidence that he was an organizer or leader of criminal activity under U.S.S.G. § 3B1.1(a). United States v. Mares-Molina, 913 F.2d 770, 773 (9th Cir.1990). The district court's factual determinations are reviewed under the clearly erroneous standard, but to the extent that the facts are not in dispute, the interpretation of U.S.S.G. § 3B1.1(a) is a purely legal question which we review de novo. See United States v. Anderson, 942 F.2d 606, 609 (9th Cir.1991) (en banc) (citing United States v. McConney, 728 F.2d 1195, 1200-01 (9th Cir.) (en banc), cert. denied, 469 U.S. 824 (1984)).
 
 
 8
 Cagan initially contends that the district court did not comply with Fed.R.Crim.P. 32(c)(3)(D) by failing to resolve the factual dispute regarding Cagan's role in the offense. When a defendant challenges the facts in a presentence report, Fed.R.Crim.P. 32(c)(3)(D) requires the court to make a finding on the contested matters or to state that the contested matters are not being considered for sentencing purposes. United States v. Fernandez-Angulo, 897 F.2d 1514, 1516 (9th Cir.1990) (en banc). Rule 32(c)(3)(D)'s requirement is satisfied when a court adopts the conclusions in the presentence report and report addendum. United States v. Rosales, 917 F.2d 1220, 1222 (9th Cir.1990); United States v. Rigby, 896 F.2d 392, 394 (9th Cir.1990). Assuming, arguendo, that a factual dispute existed, the court resolved the dispute by finding that the presentence report's version of the facts was correct. By informing Cagan that "I disagree with you, Mr. Cagan; and I want you to know why" and that "I agreed with the probation office, and I feel that an increase of four levels is appropriate because of your role," the court clearly indicated that it rejected Cagan's assertions that he had intended to run a legitimate business and that the misrepresentations had been made without Cagan's knowledge.
 
 
 9
 We do not find any merit in Cagan's related claim that the probation officer's findings in the presentence report were not reliable. Section 6A1.3 of the Guidelines allows the court to consider any relevant information in determining a sentence, provided that "the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). The probation officer's report had a sufficient indicia of reliability, because the information was drawn from FBI investigative reports, Presentence Report at 1, the accuracy of which has not been questioned by Cagan. Cf. United States v. Burns, 894 F.2d 334, 336-37 (9th Cir.1990) (upholding court's reliance on Secret Service report as sufficiently reliable information).
 
 
 10
 Furthermore, the record reveals that most, if not all, of the essential facts were undisputed. U.S.S.G. § 3B1.1(a) (1989) authorizes an upward adjustment of four levels in the offense level "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive...." A defendant must exercise some degree of control or organizational authority over others in order for § 3B1.1 to apply. See Mares-Molina, 913 F.2d at 773 (citing U.S.S.G. § 3B1.1, Application Note 3).
 
 
 11
 Here, both Cagan and the probation officer's report agreed that Cagan had a few employees, in particular Bendanelli, working under his direct supervision who were knowingly making misrepresentations to customers about the nature and value of the bonds. Cagan did not dispute that the "pitch sheet" with the spiel and misrepresentations given to telephoned customers was authored by him, that he cashed the checks received from the victims of the misrepresentations, and that none of the customers ever received the promised bonds. Cagan also stipulated that his customers lost $120,000 to $200,000 in the few months his business was in operation.
 
 
 12
 Cagan and the presentence report only disagreed as to whether one could infer that Cagan supervised these misrepresentations or whether Cagan's employees were making these misrepresentations without his knowledge or direction. Although the interviews with Cagan's former employees arguably have some exculpatory value, the district court was entitled to place greater weight on the probation office's conclusions in light of the above undisputed facts. Similarly, notwithstanding evidence indicating that employees did not misrepresent the cash value of the bonds during three particular phone calls, Cagan had already acknowledged at the sentencing hearing that other employees had been making such misrepresentations. Moreover, even the representations that bonds would be furnished appear to have been false as no bonds were delivered in a three-month period. Given the totality of the evidence in the record and the fact that the presentence report's conclusions were drawn from FBI investigative reports, that were not challenged by Cagan, we cannot say that the district court was clearly erroneous in accepting the presentence report's analysis regarding Cagan's role in the offense.
 
 III
 
 13
 Cagan next argues that he should not be subject to the upward adjustment for being "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive" because fewer than five persons participated in the offense. U.S.S.G. § 3B1.1(a). A participant is defined as a person "criminally responsible for the commission of the offense." Commentary to U.S.S.G. § 3B1.1, Application Note 1 (1989). See also Anderson, 942 F.2d at 617 (holding that U.S.S.G. § 3B1.1 only applies when the offense is committed by more than one person criminally responsible for the offense).
 
 
 14
 The Introductory Commentary to Part B of Chapter Three specifies: "When an offense is committed by more than one participant, § 3B1.1 ... may apply." There is no question in this case that there was at least one person other than Cagan criminally responsible. The "otherwise extensive" prong of § 3B1.1(a) does not require any particular number of participants but Application Note 2 states: "In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive." Commentary to U.S.S.G. § 3B1.1, Application Note 2 (1989). Here, the record indicates that Cagan's company hired approximately ten to fourteen telephone solicitors and that, aside from Cagan, at least three persons were involved in making knowing misrepresentations to customers: Bendanelli, Al Haines, and Tom Rigby. The fraudulent activities of at least four participants, along with the unknowing services of other Cagan employees, provides a sufficient basis to make Cagan an organizer or leader of a criminal activity that was "otherwise extensive" under § 3B1.1(a).
 
 IV
 
 15
 Lastly, the record does not indicate, as Cagan claims, that the court enhanced his sentence via the aggravating role provision of the Guidelines as a substitute for the underrepresentation of his criminal history. If anything, the court decreased Cagan's sentence despite its belief that Cagan was a "flimflam man" with little credibility by declining to place Cagan in Criminal History Category II in addition to enhancing his sentence for an aggravating role. Because the court did not depart from Cagan's appropriate criminal history as an initial matter, Cagan's argument that probation records should not be used to depart from criminal history under U.S.S.G. § 4A1.3, cf. United States v. Cota-Guerrero, 907 F.2d 87, 90 (9th Cir.1990) (evidence contained only in arrest records cannot be used as basis for departure) is inapposite.
 
 
 16
 The defendant's sentence is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 The government argues that this appeal should be dismissed because Cagan failed to file a timely brief. See Fed.R.App.P. 31(a) and (c). We find that this court's order of July 15, 1991 (Sneed, J.), establishing a briefing schedule with which Cagan complied, obviates this argument. See 9th Cir.R. 31-2.1(a)