**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Randall SNIDER, Defendant–
Appellant.**

**No. 91–10554.**

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 19, 1992 *.

Memorandum Filed Aug. 24, 1992.

Decided Oct. 2, 1992.

---

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a); 9th Cir.R. 34–4.

Daniel J. Albregts, Asst. Federal Public Defender, Las Vegas, Nev., for defendant-appellant David Randall Snider.

Paul Wommer, Asst. U.S. Atty., Las Vegas, Nev., for plaintiff-appellee U.S.

Before: KOZINSKI and THOMPSON, Circuit Judges, and von der HEYDT,** District Judge.

## ORDER

The memorandum disposition, filed on August 24, 1992, is amended and redesignated an authored opinion by Judge Kozinski.

## OPINION

KOZINSKI, Circuit Judge:

### I

Snider[1] and his ex-girlfriend Penny Potter went to watch a boat race in a federal park. They quarreled, and Potter threw Snider's belongings out of her car and tried to drive away. Snider chased after her, jumped into the car, and began hitting her—hard enough to break her jaw—while she was driving. When a federal park ranger came to Potter's rescue, Snider first ordered Potter to tell the ranger that ev-

---

** The Honorable James A. von der Heydt, Senior United States District Judge for the District of Alaska, sitting by designation.

1. We do not (except in the caption) follow the appellant's counsel's interesting practice of writing the names of the people involved in CAPITAL LETTERS. Neither do we follow the appellee's counsel's practice of writing appellant's name in **BOLD–FACED CAPITAL LETTERS.** Nor do we intend to write all numbers both as text and numerals, as in "eleven (11) loose teeth, two (2) of which were shattered[;] [m]oreover,

her jaw was broken in three (3) places." Appellee's Brief at 7. Finally, we will also not

"set off important text"
by putting it on
"separate lines"
and enclosing it in
"quotation marks."

See id. at 10. While we realize counsel had only our welfare in mind in engaging in these creative practices, we assure them that we would have paid no less attention to their briefs had they been more conventionally written.

erything was all right, and when she didn't comply, hit the ranger and tried to flee.

Snider was convicted of assaulting Potter, 18 U.S.C. § 113(f), assaulting the ranger, 18 U.S.C. § 111, and giving false information to the ranger when the ranger arrested him, 18 U.S.C. § 1001. Snider also got a four-level enhancement for breaking Potter's jaw, U.S.S.G. § 2A2.2(b)(3)(B) (serious bodily injury), and a two-level enhancement for instructing her to tell the ranger that all was well, U.S.S.G. § 3C1.1 (obstruction of justice).

## II

■ Snider contends he pled guilty solely because he was afraid that his lawyer Green—who, according to Snider, was concerned only about getting paid—wouldn't defend him properly if Snider insisted on going to trial. Snider alleges Green threatened that he wouldn't call any witnesses or ask any questions. Because his plea was motivated by this fear, Snider argues, there was a "fair and just reason" to allow him to withdraw his plea. *See* Fed. R.Crim.P. 32(d) (court may permit withdrawal of plea before sentencing upon showing by defendant of fair and just reason).

The district court heard both Snider's allegations and Green's denials, RT 8/16/91 at 14, 58–59, 79, and believed Green. The court found that Green was a credible witness, and that Snider wasn't; that Green wasn't preoccupied about the payment of his fees; that defendant didn't plead guilty out of fear; and that "if defendant did not wish to plead guilty or if he had any reasonable doubts, he was able to state his concerns, but he decided to plead guilty." Order Denying Motion to Withdraw Plea, CR # 69, at 5–6 (ER at 13). Questions of credibility are for the district court. *Anderson v. City of Bessemer City*, 470 U.S. 564, 574–75, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985). Having found the facts against Snider, the court didn't abuse its discretion in refusing to let him change his plea.

## III

■ Snider challenges his obstruction of justice enhancement, imposed for telling Potter to say that "everything [was] okay" to a park ranger who came by to investigate. RT 10/25/91 at 64.

Section 3C1.1 is intended to apply when defendant "threaten[s], intimidat[es], or otherwise unlawfully influenc[es] a ... witness ... or attempt[s] to do so." § 3C1.1 app. note 3(a). This was the ground that the presentence report, which the court accepted, gave for the enhancement. *See* Presentence Report at 10. There was evidence on the record from which the court could have found that Snider's statement to Potter—whose jaw he had just broken—was an attempt to intimidate her into staying quiet, rather than merely a request to help him avoid arrest. *See* RT 10/25/91 at 25 ("He ... grabbed me and just kept jerking me and trying to get me to be quiet, but every time he jerked me, it hurt more because by that time I already had a broken jaw.").

Snider argues that because his conduct, like flight, was merely "instinctive," it should, like flight, not be considered "obstruction of justice" for section 3C1.1 purposes. We find this analogy unpersuasive. *United States v. Garcia*, 909 F.2d 389 (9th Cir.1990), which Snider cites for the proposition that section 3C1.1 "clear[ly] ... is not intended to apply to the instinctive acts of a criminal about to be caught by the law," Appellant's Brief at 14, said no such thing. *Garcia* merely held that flight didn't fit within the language of the then-applicable section 3C1.1 comment (defining obstruction of justice as "conduct calculated to mislead or deceive authorities ... or otherwise to willfully interfere with the disposition of criminal charges"). 909 F.2d at 392. Snider's conduct fits well within the language of section 3C1.1 app. note 3(a).

Snider also argues that his conduct didn't result in a material hindrance to the official investigation of the case. Threatening a witness, however—unlike merely directing another person to conceal evidence, § 3C1.1 app. note 3(d)—leads to a section 3C1.1

enhancement regardless of whether it results in a material hindrance. § 3C1.1 app. note 3(a).

## IV

■ Snider received a "serious bodily injury" enhancement. The same conduct that led to this enhancement—breaking Potter's jaw—played a role in his obstruction of justice enhancement: His asking her to tell the ranger that everything was all right might not have been seen as a threat (and therefore as obstruction) had he not just severely beaten her. Snider contends that using the beating as the basis for two different enhancements was erroneous "double counting."

The sentencing guidelines view both inflicting serious bodily injury and obstructing justice as particularly blameworthy. Snider did both, and the fact that a single act—beating Potter—both caused serious bodily injury and helped obstruct justice doesn't diminish Snider's culpability. Unless the conduct punished by one guideline is akin to a "lesser included offense" of another guideline,[2] considering the same act in applying two guidelines isn't double counting. *See United States v. Wright,* 891 F.2d 209, 211 (9th Cir.1989); *cf. Illinois v. Vitale,* 447 U.S. 410, 416–21, 100 S.Ct. 2260, 2265–68, 65 L.Ed.2d 228 (1980) (defendant may be prosecuted twice for act that violated two different criminal statutes, so long as neither offense necessarily includes the other).

AFFIRMED.

---

**2.** E.g., inflicting bodily injury, punished by U.S.S.G. § 2A2.2(b)(3)(A), and inflicting serious bodily injury, punished by U.S.S.G. § 2A2.2(b)(3)(B).