24 F.3d 251
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas Raymond MAGEE, III, Defendant-Appellant.
 No. 93-10052.
 United States Court of Appeals, Ninth Circuit.
 Submitted Dec. 14, 1993.*
Decided April 21, 1994.
 
 Before: WALLACE, GARTH,** and WIGGINS, Circuit Judges.
 MEMORANDUM***
 Appellant Raymond Magee ("Appellant" or "Magee") appeals his sentence for assaulting his wife, Michelle Magee ("Michelle"). We have jurisdiction under 18 U.S.C. Sec. 3742(a), and affirm the sentence imposed by the district court.
 I. Obstruction of Justice
 Appellant first argues that the district court improperly enhanced his offense level for obstruction of justice pursuant to U.S.S.G. Sec. 3C1.1. The question of whether the defendant's conduct constitutes obstruction of justice under the Guidelines is reviewed de novo. U.S. v. Morales, 977 F.2d 1330, 1330-31 (9th Cir.1992), cert. denied, 113 S.Ct. 1339 (1993).
 
 
 1
 Appellant delivered a note to his wife, via a friend, listing things he wanted picked up from the house, and ending with "Tell don't any statements," which phrase his wife interpreted as a threat intended to keep her from cooperating with authorities. Appellant claims that the note was not meant to be given to Michelle and was not meant to be a threat. Appellant also attempted to contact Michelle on a number of different occasions, in violation of the conditions of his bail, attempted to regain access to the military base where Michelle resided, and inquired of Michelle's sister when she would leave Michelle's residence.
 
 
 2
 An attempt to influence the statements of a witness constitutes a willful obstruction of justice. The Guidelines themselves state that the enhancement applies to "threatening, intimidating, or otherwise unlawfully influencing a ... witness ..., directly or indirectly, or attempting to do so." U.S.S.G. Sec. 3C1.1, Application Note [a.n.] 3(a) (Nov. 1992). We have held that a boyfriend's instruction to his ex-girlfriend, immediately after breaking her jaw, to tell a ranger that everything was all right was an obstruction of justice. United States v. Snider, 976 F.2d 1249, 1251-52 (9th Cir.1992). Snider viewed that instruction as an obstruction of justice because it was determined to be an attempt to intimidate the victim. However, an obstruction of justice need not be a threat. Telling others not to speak to authorities and concocting stories for them to tell if they must talk has also been held an obstruction of justice. United States v. Atkinson, 966 F.2d 1270, 1277 (9th Cir.1992).
 
 
 3
 Taken out of context, the purpose of the line at the end of the note is open to a number of interpretations. Magee's repeated attempts to contact Michelle belie the innocent explanations of the note. The district court concluded that the note was evidence that Magee was willfully attempting unlawfully to influence or intimidate Michelle. That finding does not turn, as Appellant suggests, solely on Michelle's perception of a threat implicit in the note. We find no error in that conclusion, and affirm the increase in offense level.
 
 II. Acceptance of Responsibility
 
 4
 Appellant next claims that he is entitled to a reduction in offense level for acceptance of responsibility. U.S.S.G. Sec. 3E1.1. The district court's denial of a reduction in offense level for acceptance of responsibility is reviewed for clear error; the district court's determination will not be reversed unless it is without foundation. United States v. Hummasti, 986 F.2d 337, 339 (9th Cir.), cert. denied, 113 S.Ct. 2984 (1993).
 
 
 5
 Magee at first denied striking his wife. He made up a list of potential defenses, including that the floor was wet and that his son could not see what happened. His story still conflicts with that told by his son. Magee pleaded guilty two weeks before trial, in a plea bargain in which the government agreed not to institute separate prosecution for obstruction of justice and not to seek an upward departure based on past abuse of family members. (There were allegations of past physical and sexual abuse of his daughters by a previous marriage.)
 
 
 6
 The record reveals a solid foundation for refusing to reduce Appellant's offense level. His plea may be explained by motivations other than remorse or altruism, notably the threat of even more prison time. The denial of the adjustment was not clear error.
 
 III. Severity of Injuries
 
 7
 Appellant's final argument is that the district court erred by imposing a five-point increase in his offense level for the severity of the injuries sustained by Michelle. The standard for reviewing the district court's finding of requisite injury for sentence enhancement is unsettled in this circuit, and may be either de novo or clear error. United States v. Greene, 964 F.2d 911, 912 (9th Cir.1992). We do not resolve this question because we conclude that the district court's conclusion was not error, even under the more stringent standard of review.
 
 
 8
 The court split the difference between a four-point increase for "serious bodily injury" and a six-point increase for "permanent or life-threatening bodily injury," as is permitted by U.S.S.G. Sec. 2A2.2(b)(3). Appellant argues that the injuries sustained by the victim put the offense squarely within the Guidelines' description of serious bodily injury, which is "injury involving extreme physical pain or the impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. Secs. 2A2.2, a.n. 2; 1B1.1, a.n. 1(j). The government argues that even a six-level increase would be justifiable because the injuries entailed "a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement that is likely to be permanent," and therefore constitute permanent or life-threatening bodily injury. U.S.S.G. Sec. 1B1.1, a.n. 1(h).
 
 
 9
 After the attack, Michelle was treated at an emergency room and admitted to the hospital for several days. She suffered multiple fractures of the bones around her left eye and cheek, a lacerated eyelid, and swelling. The treating physician in the emergency room was concerned that there was a possibility of intracranial bleeding, which could be fatal, and ordered an emergency CT scan of her head. The scan did not show any such bleeding. Michelle also suffered a torn ciliary muscle in her left eye and scarring of the retina. She complains of persistent blurred vision, difficulty focusing, and fatigue in that eye. The ophthalmologist who treated Michelle for these problems reported that she now suffers no substantial impairment of her vision. Michelle believes that is because she is compensating for her injured eye with the other one. The ophthalmologist stated that she faces a slight increase (about 1%) in the chance of developing glaucoma or a detached retina in the future. Michelle's appearance was affected by the fractures of her cheek bone; she had reconstructive surgery, but still feels there is a noticeable defect.
 
 
 10
 Michelle's injuries have some permanence: a slight sunkenness in her cheek, an uncertain level of continuing problems with her eyesight, and some risk of more serious vision problems. It is not readily apparent that such injuries, though very serious, constitute "obvious disfigurement" or "substantial impairment" mentioned in the commentary to the Guidelines as determinants of permanent injury. But cf. United States v. James, 957 F.2d 679 (9th Cir.1992) (holding that infection of a nine-year-old girl with Herpes Type II in a sexual assault was infliction of permanent injury). Likewise, the possibility of intracranial bleeding that never materialized does not demand the conclusion that the injuries created a "substantial risk of death." A six-level augmentation under Sec. 2A2.2(b)(3)(C), therefore, is not obviously appropriate.
 
 
 11
 On the other hand, it is equally clear that injuries much less serious than those inflicted by Magee would merit a four-level increase under Sec. 2A2.2(b)(3)(B). A laceration requiring multiple sutures to close can constitute serious bodily injury for the purposes of the Guidelines. United States v. Corbin, 972 F.2d 271 (9th Cir.1992). Proportionality, a primary concern of the Guidelines, would seem to demand that a greater punishment be available for Magee's significantly more damaging attack.
 
 
 12
 The facts of this case nicely demonstrate the purpose of the five-level increase. The intermediate category allows the district court to find a good fit between punishment and crime. To fit Appellant's crime into either of the other two categories would be at least slightly procrustean. We conclude that the district court properly imposed the intermediate five-level enhancement.
 
 IV. CONCLUSION
 
 13
 The sentence imposed by the district court is AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 Hon. Leonard I. Garth, Senior United States Circuit Judge for the Third Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3