36 F.3d 1103
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Ralph Franklin OLIVERIO, Defendant-Appellant.
 No. 93-10552.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 8, 1994.
Decided Sept. 16, 1994.
 
 1
 Before: FLETCHER, HALL, and WIGGINS, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Ralph Franklin Oliverio appeals his jury conviction and sentence. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We affirm.
 
 FACTS AND PRIOR PROCEEDINGS
 
 4
 On March 24, 1993, Oliverio was indicted on two counts. Count I charged possession of a firearm by a convicted felon, in violation of 18 U.S.C. Secs. 922(g)(1) and 924(a)(2). Oliverio has a long criminal history. See Presentence Report at p 25-47. Count II charged possession of a sawed-off shotgun, in violation of 26 U.S.C. Secs. 5861(d) and 5871. In addition to simply possessing the sawed-off shotgun between January 1992 and June 1992, Oliverio used it in an armed robbery on January 29, 1992.
 
 
 5
 Prior to trial, Oliverio filed a motion to suppress all evidence seized from a garage, in which he was living. Oliverio argued that the evidence was seized during a warrantless search, in violation of his Fourth Amendment rights. Following an evidentiary hearing, the district court ruled that the landlady, Carol Paille, did not have actual authority to allow agents to search the garage. But, the district court found ATF agents acted reasonably in believing that Paille had apparent authority to consent to the search. Accordingly, the district court denied Oliverio's motion to suppress.
 
 
 6
 In addition, the district court raised sua sponte the issue of severing the two counts. The district court decided against severance, however.
 
 
 7
 At the jury trial, witnesses gave testimony about the January 29, 1992, armed robbery. At the close of the prosecution's case-in-chief, Oliverio made a motion for mistrial. Oliverio argued that inflammatory and prejudicial evidence had been presented to the jury. The district court denied Oliverio's motion.
 
 
 8
 On April 8, 1993, Oliverio was convicted on both counts. On August 2, 1993, the district court sentenced Oliverio to 113 months in prison for possession of a firearm by a convicted felon, and 112 months in prison for possession of a sawed-off shotgun. The two sentences were to run consecutively. The district court also sentenced Oliverio to two concurrent three-year terms of supervised release.
 
 DISCUSSION
 
 9
 1. Did the district court err by denying Oliverio's motion to suppress?
 
 
 10
 We review de novo a district court's denial of a motion to suppress. United States v. Yarbrough, 852 F.2d 1522, 1533 (9th Cir.), cert. denied, 488 U.S. 866 (1988). We review findings of fact made at a suppression hearing for clear error. Id.
 
 
 11
 Oliverio contends that certain evidence was illegally seized and thus wrongfully admitted at trial. Specifically, Oliverio argues that several photographs of the garage and testimony concerning documents with Oliverio's name should have been suppressed.
 
 
 12
 a. Testimony concerning documents with Oliverio's name
 
 
 13
 The testimony concerning documents with Oliverio's name was presented by Kate Bable. Bable is a private citizen who was not acting as an agent for the government when she discovered these documents. Because this evidence was obtained by a private search, it is not subject to suppression. United States v. Jacobsen, 466 U.S. 109, 113 (1984); United States v. Reed, 15 F.3d 928, 930-31 (9th Cir.1994).
 
 
 14
 b. Photographs of the garage
 
 
 15
 A consensual search is reasonable when the consent-giver has authority over the area searched. United States v. Matlock, 415 U.S. 164 (1974). A third party has actual authority when he has "mutual use of the property [and also has] joint access or control for most purposes...." Id. at 171 n. 7. The district court ruled that Paille did not have actual authority over the garage. This determination was amply supported by the evidence.
 
 
 16
 A consensual search is also reasonable if the consent-giver apparently has actual authority. Illinois v. Rodriguez, 497 U.S. 177, 188 (1990). We apply a three-part test to determine if the consent-giver had apparent authority. The government clearly satisfied the first prong of the test. The ATF agents apparently believed the "untrue fact" that Oliverio was simply storing his possessions in the garage--and not living there. See United States v. Welch, 4 F.3d 761, 765-66 (9th Cir.1993). Based on this mistaken belief, the ATF agents assessed the extent of Paille's use of, and access to, or control over, the garage. See Welch, 4 F.3d at 765-66.
 
 
 17
 Although a closer judgment call, the government also satisfied the second prong of the test. Under the circumstances, it was objectively reasonable for the ATF agents to believe that Oliverio was simply storing his possessions in the garage and not living there. See Rodriguez, 497 U.S. at 188. Specifically, the ATF agents had been told the following. Paille owned the property and had allowed Oliverio to store his possessions along with her own in the garage. Oliverio did not pay rent and did not occupy the garage through any agreement. Paille had asked Oliverio for a key when he put his own lock on the garage door. Oliverio did not give her a key, but occasionally provided Paille with one so she could access her possessions. In addition, the ATF agents could see that Paille had had the lock removed when she decided to access the garage.
 
 
 18
 Finally, the government satisfied the third prong of the test. Paille would have had actual authority to give consent to the search if Oliverio had been simply storing his possessions in the garage instead of living there. See Welch, 4 F.3d at 765. In that case, Paille and Oliverio would have had mutual use of the property. In addition, although Paille did not have true joint access, she apparently had tried to maintain some degree of access and was not denied access when she requested it. Furthermore, Paille did own the property and Oliverio did not use the property through any agreement. See Matlock, 415 U.S. at 171 n. 7.
 
 
 19
 Accordingly, we conclude that Paille had apparent authority to consent and that the photographs were admissible because they were not the products of an illegal search.
 
 
 20
 2. Did the district court abuse its discretion by failing to sever the two counts?
 
 
 21
 We review a district court's denial of a motion to sever for abuse of discretion. United States v. Burgess, 791 F.2d 676, 678 (9th Cir.1986). "The test is whether joinder was so prejudicial to a defendant that it outweighs the dominant concern with judicial economy and requires the exercise of the trial judge's discretion in only one way." Id.
 
 
 22
 Oliverio argues that the district court erred by not severing the two counts. Oliverio points out that he was charged with possession of a firearm by a convicted felon in addition to possession of a sawed-off shotgun. To prove its possession of a firearm by a convicted felon case, the government must first show that Oliverio was a convicted felon. Therefore, evidence of at least one of Oliverio's prior felony convictions must be admitted. Thus, Oliverio asserts, there was a high risk of undue prejudice. Accordingly, Oliverio concludes, the district court should have severed the two counts.
 
 
 23
 We disagree. The Ninth Circuit has rejected a per se rule requiring severance whenever evidence of prior crimes would be admissible as to one count but inadmissible as to other counts. United States v. Lewis, 787 F.2d 1318, 1322 (9th Cir.1986). Instead, this circuit applies a four factor test to determine whether a defendant was manifestly prejudiced by joinder. See Lewis, 787 F.2d at 1322-23; Burgess, 791 F.2d at 679; see also United States v. Kinslow, 860 F.2d 963, 966-67 (9th Cir.1988), cert. denied, 493 U.S. 829 (1989).
 
 
 24
 a. How the evidence of the prior conviction is entered on the record
 
 
 25
 First, the evidence of Oliverio's prior felony convictions was introduced by stipulation at the very close of the government's case-in-chief. The stipulation only mentioned the fact that Oliverio had been previously convicted of a felony.
 
 
 26
 b. The extent and nature of references to the defendant's status as a convicted person
 
 
 27
 Second, the stipulation did not mention the nature of the offenses. And, prior to being introduced by stipulation, the jury briefly heard on only two occasions that Oliverio was a convicted felon: once when the indictment charging him as a convicted felon was read during voir dire; and once when the government counsel mentioned it in his opening statement.
 
 
 28
 c. The weight of the evidence against the defendant
 
 
 29
 Third, there is ample evidence that Oliverio possessed the sawed-off shotgun. As a previous time, Oliverio had loaned the gun to Paille. In addition, Bable found the gun among Oliverio's possessions in his place of residence. Furthermore, several witnesses (Curtis Ivey, Marc Swanson, Judy Fredrickson, Pat O'Neil, and O'Neil's grandfather) presented substantial evidence that Oliverio carried the sawed-off shotgun in the January 29, 1992, armed robbery. The evidence was neither weak nor sparse.
 
 
 30
 d. The nature of the instructions to the jury relating to their consideration of the prior conviction
 
 
 31
 Finally, the jury was specifically instructed to consider each count separately. The jury was further warned not to allow their decision on either count to control their decision as to the other count. Moreover, the jury was specifically instructed that they were not to consider Oliverio's prior felony conviction as evidence that he possessed the sawed-off shotgun.
 
 
 32
 For the foregoing reasons, we conclude that the district court did not abuse its discretion by denying severance. The evidence supports the district court's conclusion that joinder did not manifestly prejudice Oliverio's chance of acquittal on the sawed-off shotgun charge.
 
 
 33
 3. Did the district court abuse its discretion by denying Oliverio's motion for a mistrial?
 
 
 34
 We review a district court's denial of a motion for mistrial for abuse of discretion. United States v. Davis, 932 F.2d 752, 761 (9th Cir.1991).
 
 
 35
 Oliverio argues that prejudicial and inflammatory evidence was introduced at trial. Oliverio concludes that the cumulative effect of the prejudicial evidence should have resulted in a mistrial.
 
 
 36
 Oliverio's argument lacks merit. First, except for two instances, all of the evidence came in non-responsive answers to questions put to the witnesses. Second, all of Oliverio's objections to the prejudicial evidence were sustained. Davis, 932 F.2d at 762. Third, in most cases, the jury was specifically admonished to ignore that evidence. Cautionary instructions are ordinarily sufficient to cure the effects of improper comments. Id. at 761. Finally, the independent evidence of guilt[1] overwhelmed any impact of the error. Id. at 762.
 
 
 37
 Given the strength of the evidence against Oliverio and the measures taken by the district court to cure any prejudice caused by improper questions and testimony, we conclude that the district court did not abuse its discretion by denying Oliverio's motion for mistrial. The government established Oliverio's guilt beyond a reasonable doubt by a fair, albeit not perfect, trial. See Brown v. United States, 411 U.S. 223, 231-32 (1973) (noting that a defendant is entitled to a fair trial, not a perfect trial); United States v. Payne, 944 F.2d 1458, 1477 (9th Cir.1991) (same), cert. denied, 112 S.Ct. 1598 (1992).
 
 
 38
 4. Did the district court err by applying U.S.S.G. Sec. 2X1.1(c)(1) and U.S.S.G. Sec. 2B3.1, instead of U.S.S.G. Sec. 2K2.1, to determine the total offense level?
 
 
 39
 We review de novo a district court's interpretation of the Sentencing Guidelines. United States v. Foppe, 993 F.2d 1444, 1452 (9th Cir.), cert. denied, 114 S.Ct. 615 (1993). We review for clear error the district court's factual determinations. Id.
 
 
 40
 The Sentencing Guideline for both possession of a firearm by a convicted felon and possession of a sawed-off shotgun is found in U.S.S.G. Sec. 2K2.1. This section provides a base offense level of 20. U.S.S.G. Sec. 2K2.1(a)(4). Applying the facts of this case, the base level is then increased by four points because Oliverio used or possessed the firearm in connection with another felony offense. U.S.S.G. Sec. 2K2.1(b)(5). The base level is then increased by two more points because Oliverio attempted to obstruct justice. U.S.S.G. Sec. 3C1.1. Thus, the total offense level is 26.
 
 
 41
 Section 2K2.1(c)(1) provides, however, "If the defendant used or possessed any firearm ... in connection with the commission or attempted commission of another offense, ... apply--(A) Sec. 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above." U.S.S.G. Sec. 2K2.1(c)(1)(A) (emphasis supplied). Section 2X1.1, in turn, instructs the district court to apply the base offense level for the other offense. Relying on U.S.S.G. Sec. 2X1.1's instruction, the district court calculated Oliverio's sentence under the Guideline for robbery.
 
 
 42
 The Guideline for robbery is U.S.S.G. Sec. 2B3.1. This section provides a base offense level of 20. U.S.S.G. Sec. 2B3.1(a). The base level is then increased by five points because Oliverio brandished the firearm. U.S.S.G. Sec. 2B3.1(b)(2)(C). The base level is then increased by two points because a victim was physically restrained to facilitate escape. U.S.S.G. Sec. 2B3.1(b)(4)(B). The base level is increased by one additional point because the taking of a controlled substance was an object of the robbery. U.S.S.G. Sec. 2B3.1(b)(5). The base level is increased by two more points because Oliverio was the organizer, leader and supervisor of the robbery. U.S.S.G. Sec. 3B1.1(c). Finally, the base level is increased by two points because Oliverio attempted to obstruct justice. U.S.S.G. Sec. 3C1.1. Thus, the total offense level is 32.
 
 
 43
 Because the total offense level for robbery is greater than that for possession of a firearm by a convicted felon and possession of a sawed-off shotgun, the district court used the offense level for robbery to calculate Oliverio's sentence. U.S.S.G. Sec. 2K2.1(c)(1)(A); see U.S.S.G. Sec. 2X1.1(c)(1). Oliverio contends that the district court erred by doing so because there was insufficient evidence presented at trial that he had been part of the January 29, 1992, armed robbery. The government counters that Oliverio's assertion ignores the standard of proof required at sentencing hearings--preponderance of the evidence. See United States v. Restrepo, 946 F.2d 654, 661 (9th Cir.1991) (en banc), cert. denied, 112 S.Ct. 1564 (1992) (stating that the standard of proof for application of the Sentencing Guidelines is preponderance of evidence).
 
 
 44
 Here, the district court relied on the testimony of Ivey, Swanson, Fredrickson, O'Neil and O'Neil's grandfather, in addition to the testimony of Paille and Bable to find, by a preponderance of the evidence, that Oliverio did commit the January 29, 1992, armed robbery. Given all of the evidence presented at trial, the district court did not err by finding that Oliverio committed the January 29, 1992, armed robbery. Accordingly, the district court did not err by cross referencing from U.S.S.G. Sec. 2K2.1(c) to U.S.S.G. Sec. 2X1.1(c) and then to Sec. 2B3.1. See United States v. Humphries, 961 F.2d 1421, 1422 (9th Cir.1992) (per curiam) (upholding a cross referencing from U.S.S.G. Sec. 2K2.1(c) to U.S.S.G. Sec. 2X1.1(c) and then to Sec. 2A2.2).
 
 
 45
 5. Did the district court err by increasing Oliverio's total offense level on account of Specific Offense Characteristics and Adjustments, and Oliverio's Criminal History Category on account of prior felony convictions and recency of release?
 
 
 46
 a. Specific Offense Characteristics: Use of Firearm
 
 
 47
 The district court increased the base offense level by 5 points because Oliverio brandished the sawed-off shotgun during the January 29, 1992 robbery. See U.S.S.G. Sec. 2B3.1(b)(2).
 
 
 48
 Oliverio argues that the district court erred because there was insufficient evidence that he was even present during the January 29, 1992 robbery. As discussed above, the district court did not err by finding, by a preponderance of the evidence, that Oliverio committed the armed robbery. Similarly, the district court did not err by finding that Oliverio brandished the weapon during the robbery. Indeed, three witnesses (Ivey, Swanson and Fredrickson) testified that Oliverio brandished the shotgun during the robbery.
 
 
 49
 b. Specific Offense Characteristics: Restraint of Victim
 
 
 50
 The district court increased the base offense level by 2 points because the two victims of the robbery (Swanson and Fredrickson) were physically restrained to facilitate escape. See U.S.S.G. Sec. 2B3.1(b)(4)(B).
 
 
 51
 Oliverio argues that the district court erred by applying this specific offense characteristic because "there is no evidence that Oliverio did this." As explained above, however, there is legally sufficient evidence that Oliverio was responsible for the victims' physical restraint. Specifically, Ivey testified that Oliverio instructed him to tie up the victims, and Swanson and Fredrickson testified that they were tied.
 
 
 52
 c. Specific Offense Characteristics: Object of Robbery was a Controlled Substance
 
 
 53
 The district court increased the base offense level by 1 point because one of the objectives of the robbery was the taking of controlled substances. See U.S.S.G. Sec. 2B3.1(b)(5).
 
 
 54
 Again, Oliverio claims that the district court erred because there is insufficient evidence. Again, however, there is evidence to support the factual determination. Specifically, Ivey testified that one of the reasons they committed the robbery was to get drugs. In addition, Ivey testified that, once in the trailer, Oliverio commanded him to search for drugs. Finally, Ivey testified that, once Ivey found drugs, Oliverio demanded the drugs.
 
 
 55
 d. Adjustment: Role in the Offense
 
 
 56
 The district court departed upward by 2 points because Oliverio was a leader, organizer, and supervisor of the robbery. See U.S.S.G. Sec. 3B1.1(c).
 
 
 57
 Again, Oliverio argues that there was insufficient evidence. Specifically, Oliverio argues that O'Neil was the leader and organizer of the robbery.
 
 
 58
 Again, we disagree. First, there can be more than one person who qualifies as a leader or organizer. See U.S.S.G. Sec. 3B1.1 comment. n. 4; United States v. Monroe, 943 F.2d 1007, 1019 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992). Second, Oliverio's actions demonstrated that he was, in fact, a leader, organizer and supervisor. For example, Oliverio recruited Ivey to go with him into the trailer after the other unnamed man backed out. See U.S.S.G. Sec. 3B1.1 comment. n. 4 (listing "the recruitment of accomplices" as one factor the court should consider in determining whether a defendant played a leadership role). In addition, Oliverio held the gun during the robbery; this automatically gave him partial control over Ivey. See id. (listing "the degree of control and authority exercised over others [in the criminal association]" as another factor).
 
 
 59
 Furthermore, Oliverio commanded Ivey to search for drugs and money during the robbery. See id. (listing "the exercise of decision making authority" as additional factor). Moreover, Oliverio commanded Ivey to turn all the drugs and money he discovered in the trailer during his search over to him. See id. (listing "the claimed right to a larger share of the fruits of the crime" as yet another factor).
 
 
 60
 e. Adjustment: Obstruction of Justice
 
 
 61
 In July of 1992, Oliverio wrote Paille a letter. The district court found that the letter constituted an attempt to intimidate Paille. Consequently, the district court departed upward by 2 points for obstruction of justice. See U.S.S.G. Sec. 3C1.1 & comment. n. 3(a).
 
 
 62
 Oliverio argues that the letter was meant only to ensure that Paille returned his property and was not intended as a threat. Given the language of the letter,[2] however, the district court's determination that the letter was an attempt to obstruct justice was not clearly erroneous. See United States v. Snider, 976 F.2d 1249, 1251-52 (9th Cir.1992).
 
 
 63
 f. Criminal History: Related Prior Felony Convictions
 
 
 64
 The district court found 9 criminal history points based upon Oliverio's three previous unrelated sentences for felony convictions. See U.S.S.G. Sec. 4A1.1(a). Oliverio was previously convicted in Nevada state court of possession of stolen property and two burglaries. See Presentence Report at p 40, 43-44.
 
 
 65
 Oliverio argues that the district court should only have found 3 criminal history points. He reasons that the three prior sentences should have been treated as one sentence for the purpose of U.S.S.G. Sec. 4A1.1(a) because the three cases are related. See U.S.S.G. Sec. 4A1.2(a)(2). He asserts that the three priors are related because they resulted from offenses that were consolidated for sentencing. See U.S.S.G. Sec. 4A1.2 comment. n. 3.
 
 
 66
 Oliverio overlooks the fact that prior sentences are considered related if they resulted from offenses that were consolidated for sentencing only if they also did not result from "offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)." See U.S.S.G. Sec. 4A1.2 comment. n. 3. Here, each of his three crimes was separated by an intervening arrest. Therefore, his three prior sentences are not related. See U.S.S.G. Sec. 4A1.2 comment. n. 3; United States v. Gallegos-Gonzalez, 3 F.3d 325, 326-28 (9th Cir.1993).
 
 
 67
 g. Criminal History: Offense Less Than Two Years from Release
 
 
 68
 The district court found that Oliverio committed the offenses of which he was convicted (possession of a firearm by a convicted felon and possession of a sawed-off shotgun) within two years of being released from custody. Consequently, the district court added 2 criminal history points. See U.S.S.G. Sec. 4A1.1(e).
 
 
 69
 Oliverio argues that the time period for purposes of computing his additional criminal history points runs from February of 1990, when he was released from custody. Oliverio fails to take into consideration, however, the fact that his parole was revoked in July of 1990 and he was reincarcerated. He was released from custody again in October of 1990. Therefore, the time period for purposes of computing the criminal history points runs from October of 1990 and the district court was correct to conclude that the crimes were committed within two years of release. See U.S.S.G. Sec. 4A1.2(k)(2)(A).
 
 
 70
 6. Did the district court err by imposing consecutive sentences?
 
 
 71
 The district court calculated that Oliverio's base offense level was 28. The district court then adjusted upward by 4 points. Thus, the total offense level was 32. The district court calculated Oliverio's criminal history to be 16, which is Category VI. The district court then applied the Sentencing Table at Chapter Five and determined that the Guideline range is 210-262 months. The district court then modified the top of the range to be the sum of the statutory maximums of the two crimes. U.S.S.G. Sec. 5G1.2(b). The district court determined the modified range to be 210-240 months. The district court appears to have chosen the midpoint of the range (225 months).
 
 
 72
 To the extent possible, the total punishment (225 months) is to be imposed concurrently on each count. See U.S.S.G. Secs. 5G1.2(b) & (c). Here, however, each count has a statutory maximum of 120 months. Thus, the district court could not impose on each count the total punishment. See U.S.S.G. Secs. 5G1.2(b) and 5G1.1(a). Where no count carries an adequate statutory maximum, consecutive sentences are to be imposed to the extent necessary to achieve the total punishment. See U.S.S.G. Sec. 5G1.2 comment. Thus, the district court did not err by dividing the total punishment by two and imposing consecutive sentences: 113 months for Count I and 112 months for Count II.[3] See U.S.S.G. Sec. 5G1.2(d).
 
 CONCLUSION
 
 73
 For the foregoing reasons, we AFFIRM Oliverio's jury conviction and sentence.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The independent evidence of guilt includes the following. Ivey, a participant in the armed robbery, testified that Oliverio was the man carrying the sawed-off shotgun in the January 29, 1992, armed robbery. Swanson and Fredrickson, the victims of the armed robbery, testified that the man carrying the shotgun matched Oliverio's physical characteristics. O'Neil, another participant in the armed robbery, testified that the man carrying the gun the night of the armed robbery drove a red Cadillac, which matches the color and type of Oliverio's car. O'Neil also testified that the man carrying the gun that night was nicknamed Stretch, which is Oliverio's nickname. Paille testified that Oliverio loaned her a sawed-off shotgun. Bable testified that she found the sawed-off shotgun among Oliverio's possessions
 
 
 [2]
 The letter stated in part, "[B]e smart for a change. You don[']t know me that well, and you don[']t know what I[']m capable of doing. .... [D]on]'t let [the police] fool you with false promises[.] [T]hey don[']t care about what happens to you."
 
 
 [3]
 We note that the district court probably should have sentenced Oliverio to 120 months on Count I and 105 months on Count II. But, to the extent this is error, Oliverio is not prejudiced by it